111 T.C. No. 15


UNITED STATES TAX COURT



JOHN F. ROMANN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, AND BOARD OF TRUSTEES, MEBA
PENSION TRUST, Respondents


Docket No. 8842-96R.                    Filed November 4, 1998.



        The MEBA Plan, a collectively bargained, multiemployer
pension plan, provided notice in an employee publication
that the MEBA Plan was going to apply to the IRS for an
advance determination that it continued to be a tax-
qualified pension plan after adoption of certain plan
amendments.  P, a retiree receiving a pension under the MEBA
Plan, received this notice and wrote to the IRS asserting
that the MEBA Plan, after incorporation of the amendments,
no longer would be tax-qualified.  The IRS issued a
favorable determination letter to the MEBA Plan.  P filed a
petition for declaratory judgment under sec. 7476, I.R.C.
1986.  Respondent Commissioner moved under Rule 215(a)(2),
Tax Court Rules of Practice and Procedure, that the Board of
Trustees of the MEBA Pension Trust (the Board) be joined as
a party to this action.  We granted that motion and the
Board was joined as a party to this action.  After the case
was submitted for decision on the administrative record,
respondent Commissioner filed a motion to dismiss for lack
of jurisdiction, asserting that P was not entitled to file

suit under sec. 7476, I.R.C. 1986, because as a retired participant P did not qualify as an interested party under sec. 7476(b)(1), I.R.C. 1986.

Held: P, as a retired employee of a collectively bargained plan, is not an interested party for purposes of sec. 7476(b)(1), I.R.C. 1986, where the plan amendments do not result in a plan termination.

John F. Romann, pro se.

Laurence D. Zeigler, for the respondent Commissioner.

Paul A. Green, for the respondent Board of Trustees, MEBA Pension Trust.

OPINION

CHABOT, Judge:  This matter is before the Court on respondent Commissioner's motion to dismiss for lack of jurisdiction.  The issue for decision is whether petitioner is an "interested party" entitled to file a petition for declaratory judgment pursuant to section 7476(b)(1),[1] with respect to the continuing qualification of the MEBA Pension Trust Regulations (hereinafter sometime referred to as the MEBA Plan), under subchapter D of chapter 1, sec. 401-424.  MEBA is an acronym for Marine Engineers' Beneficial Association.

Background

This case was submitted for decision on the basis of an administrative record as filed by and appropriately certified on

---

[1]    Unless indicated otherwise, all chapter, subchapter, and section references are to chapters, subchapters, and sections of the Internal Revenue Code of 1986, as in effect at the time the petition herein was filed.

behalf of all the parties under Rule 217(b)(1).[2]  The administrative record as so filed and certified is incorporated herein by this reference; statements as to facts represented therein are assumed to be true for purposes of the motion to dismiss.  Additional facts, for purposes of this motion, have been found on the basis of petitioner's admissions.

When the petition for declaratory judgment was filed, the address of the Board of Trustees of the MEBA Pension Trust, hereinafter sometimes referred to as the Board, was in Baltimore, Maryland.

Procedure

On March 24, 1995, the Board formally asked the Baltimore, Md., District Director of the IRS (hereafter sometimes referred to as the District Director) to issue a favorable determination letter that the MEBA Plan would remain tax-qualified upon adoption of certain amendments.  The Board had already issued a Notice to Interested Parties that it intended to file for such an advance determination.  This notice was printed in the March/April 1995 issue of Marine Officer, a newspaper which is published by the Marine Engineers' Beneficial Association (AFL-CIO) and distributed to members and pensioners.  On March 12, 1995, petitioner wrote to the District Director with comments regarding the continuing tax-qualified status for the MEBA Plan.

---

[2]  Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.

On October 6, 1995, the District Director wrote to petitioner acknowledging receipt of petitioner's March 12 letter. The October 6 letter states in part: "We have received your comments as an interested party in regard to the Application for Determination submitted on behalf of [The MEBA Plan]."

On February 12, 1996, the District Director wrote to the Board that the District Director had (1) received comments from interested parties about the plan's tax-qualified status and that these comments did not have an adverse effect on the plan's qualification and (2) made a favorable determination as to the qualification of the MEBA Plan.

Also by letter dated February 12, 1996, the District Director wrote to petitioner of the District Director's favorable determination regarding the MEBA Plan's qualification. This letter states: "Interested parties who make comments on a determination letter request may petition the U.S. Tax Court for a declaratory judgment regarding the determination if they disagree with the determination."

On May 6, 1996, petitioner filed a petition with this Court asking for a declaratory judgment under section 7476 that the MEBA Plan as amended does not meet the requirements of section 401(a).

After petitioner filed an amended petition, respondent Commissioner filed a motion pursuant to Rule 215(a)(2) to join

the Board as a party to this action. We granted that motion, and the Board was joined as a party.

After the stipulated administrative record was filed, and additional exhibits were made part of the administrative record on petitioner's motions, we ordered that the instant case was submitted for disposition on the administrative record under Rule 217. Respondent Board, on opening brief, challenged petitioner's status as an interested party eligible to petition the Court for declaratory judgment under section 7476. Respondent Commissioner challenged, on opening brief, our jurisdiction of certain of petitioner's contentions but did not then challenge petitioner's standing to bring the instant case. Petitioner's brief responded to respondent Board that he is a participant in the MEBA Plan, an interested party, and a former employee, and so is entitled to bring the instant declaratory judgment case.

Respondent Commissioner then filed the instant motion to dismiss for lack of jurisdiction because petitioner did not have standing to bring the instant case.

Facts

The MEBA Plan

The MEBA Plan was established as of August 1, 1950, pursuant to collective-bargaining agreements, and has been continued over the years by a series of collective-bargaining agreements. The MEBA Plan is a multiemployer plan that includes both defined benefit and defined contribution (money purchase pension)

components.  The MEBA Plan had received a favorable determination letter dated May 4, 1987, to take account of amendments adopted on October 30, 1986.

As the result of a collective-bargaining agreement, effective June 16, 1990,[3] several changes were made to the MEBA Plan.  Amendment 91-1 modified the MEBA Plan to include a supplemental pension benefit, hereinafter sometimes referred to as the SPB, that was to be paid to eligible pensioners starting January 1, 1991, and ending the earlier of June 16, 1994, or the date of the pensioner's death.  The expiration of the SPB was extended first to September 30, 1994, and then to December 31, 1994, by collective bargaining agreements entered into in 1994.

Amendments to the MEBA Medical and Benefits Plan, hereinafter sometimes referred to as MEBA Medical, resulted in retired participants' being required to pay a fee for continued retiree health insurance coverage.  Pensioners affected by the amendments to MEBA Medical were given three options, as follows: (1) Terminate health care coverage; (2) authorize the MEBA Plan

---

[3]     Both the amended petition and respondent Board's answer state that this collective-bargaining agreement was effective June 16, 1990.  Respondent Commissioner's answer does not deal with the effective date of this collective-bargaining agreement. The copy of Amendment 91-1 in the stipulated administrative record indicates that Amendment 91-1 was "adopted in principle" on Oct. 17, 1990, was "ratified (as revised)" on Mar. 11, 1991, and became "effective" on or as of Jan. 1, 1991.  These different dates are symptomatic of lack of clarity at many points in the record, but do not affect our analyses or conclusions.

to pay all or a portion of the SPB directly to MEBA Medical up to the amount of the pensioner's contribution for continued coverage; or (3) pay the pensioner's contribution for continued coverage from the pensioner's pocket directly to MEBA Medical. To elect the first option, a participant was required to check a box and sign an election form that reads as follows:

> I elect on behalf of myself and my family not to be covered by the MEBA Medical and Benefits Plan ("Medical Plan"). I understand that any Supplemental Pension Benefit payable under the MEBA Pension Plan ("Pension Plan") will be paid directly to me, subject to any withholding I may authorize. I further understand that, as a result of this election, I and my family will be permanently prohibited from participating in the Medical Plan as a pensioner. I understand that my election to exclude myself and my family from coverage as a pensioner under, or otherwise participate in, the Medical Plan as a pensioner is irrevocable (and may never be changed).

Table 1 shows the monthly SPB to, and the medical benefits contribution from, petitioner and other pensioners with less than 20 years of service.

### Table 1

| Year | SPB | Medical |
|------|---------|---------|
| 1991 | $148.30 | $129.00 |
| 1992 | 164.90 | 143.40 |
| 1993 | 184.30 | 160.30 |
| 1994 | 200.20 | 174.10 |

MEBA Plan Instrument

Article I of the MEBA Plan instrument provides definitions. Section 1.07 of article I provides as follows:

The term "Effective Date of Pension" shall mean the date as of which payment of Pension benefits shall commence, which is the first day of the month following the month in which occurs the latest of:

> (1) the application for Pension benefits is received at the Plan Office;
> (2) the Employee terminates Covered Employment; and
> (3) the Employee's last vacation period terminates.

Section 1.08 of article I defines "employee" as follows:

The term "Employee" shall mean:

(a)  Licensed Officers employed by Employers;

(b)  Port engineers, port electricians and hull inspectors for whom Employers are obligated to make contributions to the MEBA Pension Trust pursuant to collective bargaining agreements with the Union;

(c)  other employees for whom Employers are obligated to make contributions to the MEBA Pension Trust pursuant to collective bargaining agreements with the Union; and

(d)  certain employees, officials and representative of (1) the Union, and any of its affiliates, (2) the Association, (3) the ROU, and (4) the MEBA Pension, Medical and Benefits, Vacation, and Training Plans, who are not covered by a collective bargaining agreement and for whom contributions are made to the MEBA Pension Trust as determined by the Trustees subject to the Trust Agreement, and to the extent permitted by law, the applicable provisions set forth in the collective bargaining agreements between the Union or any of is affiliates and the Employers.

(e)  Notwithstanding anything to the contrary, any person who is an active participant in or receiving a pension from District No. 1, MEBA Pension Plan covering certain employees of the Union and the Plan Office (the Staff Plan) shall not be considered an Employee.

Other definitions are included in different parts of the MEBA Plan instrument.  Section 2A.11 of article II-A provides as follows:

     (a)  To Retire (or be Retired or in Retirement), an Employee must:

        (1)  withdraw completely from:

           (A)  Covered Employment;
           (B)  work aboard any vessel; and
           (C)  in the case of a port engineer, port electrician or hull inspector, any service in the maritime industry that involves a Licensed Officer's knowledge or expertise, including but not limited to, knowledge or expertise in construction, repair, operational or maintenance activities.

        (2)  complete taking of his earned vacation; and

        (3)  furnish the Plan Office with satisfactory documentary proof that he has withdrawn from membership in the Union and the ROU, and has surrendered his seaman's papers to the Trustees.

A pensioner who wants to return to maritime employment without penalty must ask the Trustees, in writing, for permission to do so. Sec. 2A.12 of article II-A. Penalties could include the following: (1) Suspension of the pension for the month in which the employment occurs, and for up to the next 6 months, (2) return of any lump sum distribution previously paid, and (3) forfeiture of eligibility for benefits under MEBA Membership. Sec. 2A.14 of article II-A.

Petitioner

Petitioner is retired and is receiving a pension under the MEBA Plan. His regular monthly pension became effective January 1, 1991; the amount for 1991 was $71.16, for 1992 was $74.43, for 1993 was $76.63, and for 1994 was $78.81. These amounts are in addition to the SPB, supra table 1. Petitioner received a check

in the amount of $1,631.30, representing his SPB for January through November 1991, and thereafter received his SPB monthly.

Petitioner retains a valid chief engineer's license issued by the U.S. Coast Guard for standby use if needed by MEBA.

On August 22, 1991, petitioner elected to forgo continued health care coverage through MEBA Medical. Petitioner checked option one and signed the election form discussed <u>supra</u>, which explicitly states that the election to forgo medical benefits for the participant and the participant's family is irrevocable.

Discussion

Section 7476[4] gives the Tax Court jurisdiction to make a declaratory judgment with regard to the tax-qualified status of a retirement plan.

---

[4] Sec. 7476 provides, in pertinent part, as follows:

SEC. 7476.   DECLARATORY JUDGMENTS RELATING TO QUALIFICATION OF CERTAIN RETIREMENT PLANS.

(a) Creation of Remedy.--In a case of actual controversy involving--

(1) a determination by the Secretary with respect to the initial qualification or continuing qualification of a retirement plan under subchapter D of chapter 1, or

(2) a failure by the Secretary to make a determination with respect to--

(A) such initial qualification, or

(B) such continuing qualification if the controversy arises from a plan amendment or plan termination,

upon the filing of an appropriate pleading, the Tax Court may make a declaration with respect to such initial qualification or continuing qualification.  Any such declaration shall have the force and effect of a decision of the Tax Court and shall be reviewable as such.  For purposes of this section, a determination with respect to a continuing qualification includes any revocation of or other change in a qualification.

(b) Limitations.--

(1) Petitioner.--A pleading may be filed under this section only by a petitioner who is the employer, the plan administrator, an employee who has qualified under regulations prescribed by the Secretary as an interested party for purposes of pursuing administrative remedies within the Internal Revenue Service, or the Pension Benefit Guaranty Corporation.

The statute provides that only certain persons are permitted to file a pleading to initiate a proceeding for such a declaratory judgment. Sec. 7476(b)(1). Petitioner maintains that he is a permissible petitioner because, in the words of section 7476(b)(1), he is "an employee who has qualified under regulations prescribed by the Secretary as an interested party for purposes of pursuing administrative remedies within the Internal Revenue Service".

Respondent Commissioner contends[5] that petitioner does not qualify as an "interested party" because (1) the MEBA Plan is collectively bargained and so the applicable regulation is section 1.7476-1(b)(4), Income Tax Regs.; (2) this regulation requires an interested party to be a "present" employee, and petitioner had retired and so was not a present employee at the relevant time of determination; and (3) petitioner is not an interested party under any other provision in the regulations.

Petitioner responds that he qualifies as an interested party because (1) he is considered retired for pension purposes only; (2) respondent Commissioner misinterprets section 1.7476-1(b)(4), Income Tax Regs.; (3) the Supreme Court's interpretation of the term "employee" in Robinson v. Shell Oil Co., 519 U.S. 337 (1997), should be applied to section 7476; and (4) in any event

_____

[5] Respondent Board "concurs in the filing and granting" of respondent Commissioner's motion to dismiss.

he is an interested party under section 1.7476-1(b)(5), Income Tax Regs., relating to plan terminations.

We agree with respondent Commissioner.

(1) Preliminary Comments

Firstly, it is well settled that this Court can proceed in a case only if we have jurisdiction and that any party, or the Court sua sponte, can question jurisdiction at any time, even after the case has been tried and briefed.  Normac, Inc. & Normac International v. Commissioner, 90 T.C. 142, 146-147 (1988); Kahle v. Commissioner, 88 T.C. 1063 n.3 (1987), and cases cited therein.  We have jurisdiction to determine jurisdiction and "whenever it appears that this Court may not have jurisdiction to entertain the proceeding that question must be decided." Wheeler's Peachtree Pharmacy, Inc. v. Commissioner, 35 T.C. 177, 179 (1960); 508 Clinton Street Corp. v. Commissioner, 89 T.C. 352, 353 n.2 (1987).

Where this Court's jurisdiction is duly challenged, the jurisdiction must be affirmatively shown.  Wheeler's Peachtree Pharmacy, Inc. v. Commissioner, 35 T.C. at 180; Louisiana Naval Stores, Inc. v. Commissioner, 18 B.T.A. 533, 536-537 (1929). In particular, petitioner has the burden of proving that the jurisdictional requirements of section 7476 have been met.  Rule 217(c)(1)(A); Halliburton Co. v. Commissioner, 98 T.C. 88, 94 (1992); BBS Associates, Inc. v. Commissioner, 74 T.C. 1118, 1120-

1121 (1980), affd. without published opinion 661 F.2d 913 (3d Cir. 1981).

Secondly, respondent Commissioner acknowledges advising petitioner that petitioner was an interested party, not only during the administrative processing of respondent Board's application, but also in the pleadings in the instant case. Respondent Commissioner maintains that these actions cannot serve to give petitioner interested party status because "The Court's jurisdiction is statutory and cannot be enlarged by the actions of the parties." Petitioner responds as follows:

24. Admits the fact that Commissioner advised the petitioner that he was an interested party, entitled to file a Petition For Declaratory Judgment in the U.S. Tax Court. (Administrative Record, Exhibits 4-D, 9-I and 10-J)

25. Admits that the Court's jurisdiction is statuatory [sic], and that the U.S. Supreme Court has power to prescribe that the statute shall not abridge, enlarge or modify the substantive right of the petitioner as an interested party, to appeal the decision of the Commissioner who abused discretion in the issuance of a Favorable Leter [sic] of Determination dated February 12, 1996, to the Board of Trustees, MEBA Pension Trust, #001, "out of time", (See Official Court Record, Petitioners Opening Brief, Section VIII ARGUMENT, NOTE 11, on pages 78 and 79 at (b)(i)(ii), and "based on information supplied" (Administrative Record, Exhibit 11-K, para. 1) instead of issuing a "timely" Letter of Favorable Determination, based upon required information supplied for determination of the "Entire Plan As Amended. (U.S. Code, Title 28, Rule 2072, Judiciary & Judicial Procedure). (Official Court Record, Petitioners Opening Brief, Section VIII, ARGUMENT at NOTE & NOTE 8, pages 65 through 72).

Respondent is correct that our jurisdiction cannot be enlarged by agreement of the parties, or waiver, or failure to

object.  Freedman v. Commissioner, 71 T.C. 564 (1979); see, e.g., Loftus v. Commissioner, 90 T.C. 845, 861 (1988), affd. without published opinion 872 F.2d 1021 (2d Cir. 1989).  This is true of Federal courts generally, and not merely because of some special characteristic of this Court.  Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986).

Thirdly, a legislative regulation, which is issued pursuant to a specific congressional grant of authority to the Secretary of the Treasury, is entitled to greater deference than an interpretive regulation, which is promulgated under the general rulemaking power vested in the Secretary by section 7805(a). Peterson Marital Trust v. Commissioner, 102 T.C. 790, 797-798 (1994), (and cases cited therein), affd. 78 F.3d 795, 798 (2d Cir. 1996).  Section 1.7476-1(b), Income Tax Regs. (relating to interested parties), has been promulgated under the specific instruction in section 7476(b)(1) that a person who wishes to be an employee party-petitioner in a section 7476 declaratory judgment proceeding must be one "who has qualified under regulations prescribed by the Secretary as an interested party for purposes of pursuing administrative remedies within the Internal Revenue Service".  Accordingly, this regulation is a legislative regulation.  To be valid, section 1.7476-1(b), Income Tax Regs., need not be the only, or even the best, construction of section 7476(b)(1).  See Atlantic Mutual Ins. Co. v.

Commissioner, 523 U.S. ___, 118 S. Ct. 1413, 1418 (Apr. 21, 1998). The Supreme Court has stated that a reviewing court

> need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding. [Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n.11 (1984); citations omitted.]

We proceed to consider first whether petitioner qualifies as an interested party under section 1.7476-1(b)(4), Income Tax Regs., relating to collectively bargained plans. If petitioner does not so qualify, we then consider whether section 1.7476-1(b)(5), Income Tax Regs., relating to plan terminations, applies to the instant case in such a way as to enable petitioner to qualify as an interested party.

### (2) Collectively Bargained Plans

Section 1.7476-1(b), Income Tax Regs., provides the detailed rules for determining who is "an employee who has qualified * * * as an interested party", within the meaning of section 7476(b)(1). Paragraph (b)(1) of the regulation provides the general rule, "If paragraphs (b)(2), (3), (4), and (5) of this section do not apply". Paragraph (b)(2) of the regulation supersedes paragraph (b)(1) in the case of certain plans covering a principal owner. Paragraph (b)(3) of the regulation supersedes paragraphs (b)(1) and (2) in the case of certain plan amendments.

Paragraph (b)(4)[6] of the regulation supersedes paragraphs (b)(1),

(2), and (3) in the case of collectively bargained plans.

_____

[6] Sec. 1.7476-1, Income Tax Regs., provides, in pertinent part, as follows:

SEC. 1.7476-1 Interested parties.

\* \* \* \* \* \* \*

(b) Interested parties--

\* \* \* \* \* \* \*

(4) Collectively bargained plans. In the case of an application with respect to a plan described in section 413(a) (relating to collectively bargained plans), paragraphs (b)(1), (2) and (3) of this section shall not apply and all present employees covered by a collective-bargaining agreement pursuant to which the plan is maintained shall be interested parties.

(5) Plan terminations. In the case of an application for an advance determination with respect to whether a plan termination affects the continuing qualification of a retirement plan, paragraphs (b)(1), (2), (3) and (4) of this section shall not apply, and all present employees with accrued benefits under the plan, all former employees with vested benefits under the plan, and all beneficiaries of deceased former employees currently receiving benefits under the plan, shall be interested parties.

\* \* \* \* \* \* \*

(c) Special rules. For purposes of paragraph (b) of this section and section 1.7476-2:

(1) Time of determination. The status of an individual as an interested party and as a present employee or former employee shall be determined as of a date determined by the applicant, which date shall not be earlier than five business days before the first date on which the notice of the application is given to interested parties pursuant to section 1.7476-2 nor later than the date on which such notice is given.

-18-

Paragraph (b)(5) of the regulation supersedes paragraph (b)(1), (2), (3), and (4) in the case of plan terminations.

The MEBA Plan instrument states in its preamble that it is a collectively bargained plan. All the parties herein state that it is a collectively bargained plan. We have so found. Accordingly, the determination of whether petitioner has qualified as an interested party under Treasury Regulations is to be made under section 1.7476-1(b)(4), Income Tax Regs.[7] Under this provision, "present employees covered by a collective-bargaining agreement pursuant to which the plan is maintained shall be interested parties."

The regulation does not define the term "present employee". However, the meaning of this term may be gleaned from the regulation's use of other terms. In particular, (1) paragraph (b)(5) of the regulation (discussed infra) distinguishes between "present employees", "former employees", and "beneficiaries of deceased former employees"; (2) paragraph (c)(1) of the regulation distinguishes between "present employee" and "former employee"; and (3) paragraph (c) of section 1.7476-2, Income Tax Regs., provides one set of notification rules for present employees in subparagraph (1) thereof and a different set of

_____

[7] The question of whether sec. 1.7476-1(b)(5), Income Tax Regs., supersedes paragraph (b)(4) of the regulation is dealt with infra.

notification rules for former employees and beneficiaries in subparagraph (2) thereof.

Based on the foregoing, we conclude that these regulations distinguish between present employees and former employees as mutually exclusive categories. As a result, if petitioner's status is that he is a former employee, then he would not be a present employee and, as a result, he would not be an interested party within the meaning of section 1.7476-1(b)(4), Income Tax Regs.

Section 1.7476-1(c)(1), Income Tax Regs., provides that the status of an individual as an interested party is to be determined as of a date generally during a 6-business-day period ending on the date that the relevant notice was given to interested parties. Supra note 6. Under this regulation the individual applicant is to determine which date during this period is to be the status determination date.

The parties have not directed our attention to, and we have not found, anything in the record that shows that the Board has determined a date, in conformity with section 1.7476-1(c)(1), Income Tax Regs. Nor does the administrative record show precisely when the notice was given. However, the administrative record shows that the notice was given by an announcement published in the March/April 1995 issue of a publication called Marine Officer, and we conclude that petitioner must have received the notice on or before March 12, 1995, the date he

first wrote to the District Director about the Plan.  We think it is more likely than not that that issue of Marine Officer was first distributed in February or early March 1995.

Under these circumstances, in order to carry his burden of proof as to jurisdiction, petitioner must persuade us that it is more likely than not that he was a present employee at whatever time we might reasonably conclude was the correct determination period under section 1.7476-1(c)(1), Income Tax Regs., most likely some time in February or early March 1995.

Petitioner's pension became effective January 1, 1991. Under section 1.07 of article I of the MEBA Plan instrument, petitioner's pension became effective the month after the month in which the latest of the following occurred:  (1) Petitioner's application for pension was received at the plan office; (2) petitioner ended his covered employment; and (3) petitioner ended his last vacation period.  All three of these requirements had to have been met by December 1990 for petitioner's pension to have been effective on January 1, 1991.

Under section 2A.11 of article II-A of the MEBA Plan instrument, a participant is considered retired when she or he completely withdraws from covered employment.  For petitioner's pension to have become effective January 1, 1991, petitioner must have withdrawn completely from covered employment before that date.

-21-

Petitioner does not contend that he returned to employment covered under the MEBA Plan at any time after the January 1, 1991, effective date of his pension. Indeed petitioner does not contend that he returned to any employment on behalf of any of the employers in the MEBA Plan after January 1, 1991. Thus, for any time after that date, including early 1995, petitioner was a former employee and he was not a present employee. Accordingly, we conclude that, based on our findings as to the timing of the determination period under section 1.7476-1(c)(1), Income Tax Regs., petitioner was not a present employee during that period, and so petitioner cannot be an interested party under paragraph (b)(4) of section 1.7476-1, Income Tax Regs.[8] This conclusion is based on our analysis of the evidence in the record and our conclusion as to what the preponderance of the evidence leads to. Thus, the burden of proof is immaterial to this conclusion. Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 210 n.16 (1998), and cases cited therein.

Petitioner contends that he is "classified as * * * retired for pension purposes only." Petitioner further argues that--

---

[8] To the same effect under paragraph (b)(1) of sec. 1.7476-1, Income Tax Regs., see Dillon v. Commissioner, T.C. Memo. 1993-239, affd. without published opinion 16 F.3d 1227 (8th Cir. 1994), and under paragraph (b)(3) of this regulation, see Jones v. Commissioner, T.C. Memo. 1980-512, affd. without published opinion 676 F.2d 710 (9th Cir. 1982); see also Day v. Commissioner, T.C. Memo. 1985-251, nn.12-13.

(b) Article 2A.11 of the Regulations, states, "To be considered retired, an Employee must ---". The petitioner is still "an employee" under Article 2A.11, and remains an employee, notwithstanding Article 1.08 of the MEBA TRUST REGULATIONS (Administrative Record, Exhibit 1-A, pages "4" and "5" of the Trust Regulations. Otherwise, the petitioner could not comply with the provisions of Article 2A.13 of the MEBA TRUST REGULATIONS in respect to "Re-employment of Pensioners During Conditions of Officer Shortages". (Response Exhibit #2, and Response Exhibit #3).

Petitioner misreads the cited provision of the MEBA Plan instrument. As can be seen from the text of section 2A.11 of article II-A of the MEBA Plan instrument,[9] attainment of retired

---

[9]    2A.11  RETIRE AND MARITIME EMPLOYMENT DEFINED

(a) To Retire (or be Retired or in Retirement), an Employee must:

   (1)  withdraw completely from:

      (A)  Covered Employment;

      (B)  work aboard any vessel; and

      (C)  in the case of a port engineer, port electrician or hull inspector, any service in the maritime industry that involves a Licensed Officer's knowledge or expertise, including but not limited to, knowledge or expertise in construction, repair, operational or maintenance activities.

   (2)  complete the taking of his earned vacation; and

   (3)  furnish the Plan Office with satisfactory documentary proof that he has withdrawn from membership in the Union and the ROU, and has surrendered his seaman's papers to the Trustees.

status can be achieved only by taking steps which effectively preclude any current employment and make unlikely any future employment.  Section 2A.13 of article II-A of the MEBA Plan instrument provides for exceptional circumstances under which a retiree could return to covered employment without suffering the full range of penalties provided by sections 2A.12 and 2A.14. Those circumstances are war or national emergency (subsection (a)(1)) and shortage of personnel (subsection (a)(2)).  Those circumstances come into play only if (a) the war, national emergency, or shortage of personnel exists; (b) the pensioner notifies the MEBA Plan trustees in writing; and (c) the MEBA Plan trustees permit the pensioner to return to covered employment. We have not found, and petitioner has not directed our attention to, anything in the record in the instant case that suggests that any such specified emergency condition existed, that petitioner requested permission to return to covered employment, or that petitioner was granted permission to return to covered employment.

Thus, as we see the situation, the provisions of the MEBA Plan instrument to which petitioner directs our attention make it clear that petitioner was no longer a present employee under the MEBA Plan instrument throughout the relevant period for determining petitioner's status.

Petitioner also appears to assert that respondent Commissioner misinterprets section 1.7476-1(b)(4), Income Tax Regs., as follows:

19.      (a) Denies that Section 1.7476-1(b)(4), Income Tax Regs., provides that "interested parties" with respect to an application for a determination regarding a collectively bargained plan must be "present employees covered by a C/B agreement pursuant to which plan is maintained-------" Petitioners [sic] denial is grounded upon alleged mis-interpretation of Inc. Tax. Regulation 1.7476-1(b)(4), by the Respondent (Commissioner IRS)

(b) It is sometimes considered "unfortunate" that retired employees must be covered under a collectively bargained plan, instead of being able to enjoy the liberty to appoint their own representative(s). If such were possible, this litigation may have been avoided. (See Official Court Record, Petitioners [sic] REPLY to Respondent (Commissioner IRS) ANSWER to Amended Petition For Declaratory Judgement (Retirement Plan) on page "21", under "F-14", and continuing on page "22".) (Administrative Record, Exhibit 14-N, page 17, para. "9", An Amicus on page "7" reproduced as page "43" as a part of the Official Court Record in Petitioners [sic] Opening Brief, a reference to entire paragraph at the top of the page).

(c) The petitioner alleges, that, it would appear that the Secretary, in writing the remedial mechanism(s) available under I.R.C. 1.7476(a), [sic] would have been mindful of paragraph (b) above, and so worded Section 1.7476(b)(4) [sic] of the Income Tax Regulations to insure that all present employees covered by a Collective Bargaining Agreement pursuant to which the plan is maintained, "shall be interested parties".

We conclude that respondent Commissioner has correctly interpreted section 1.7476-1(b)(4), Income Tax Regs.

Paragraph (1) of section 7476(b) provides that a declaratory judgment proceeding may be brought under section 7476 "only" by a

person who fits within a category listed in that paragraph.  The

only category that petitioner claims to fit within is--

>an employee who has qualified under regulations
>prescribed by the Secretary as an interested party for
>purposes of pursing administrative remedies within the
>Internal Revenue Service *  *  *.

Petitioner cannot fit within that category, and thus cannot bring

the instant proceeding, unless he qualifies under the applicable

regulations.

Petitioner claims that he qualifies under section 1.7476-

1(b)(4), Income Tax Regs.  This regulation provides only one

category of persons who are interested parties--

>all present employees covered by a collective-bargaining
>agreement pursuant to which the plan is maintained * * *.

Because this regulation does not provide any other category of

persons who are interested parties,[10] it follows that interested

parties under paragraph (b)(4) of the regulation must be "present

employees covered by a collective-bargaining agreement pursuant

to which the plan is maintained".

Petitioner's contention in paragraphs 19(a) and (b) does not

specifically call for invalidation of the regulation, or judicial

rewriting of the regulation, but rather appears to be a plea that

retired employees should have some special status that would

entitle them to interested party status.

---

[10]    Sec. 1.7476-1(b)(6), Income Tax Regs., provides a
series of exceptions; however, none of these exceptions applies
to paragraph (b)(4) of the regulation.

It is clear from the legislative history that the statute gives a special status to employees and that this was not inadvertent. See _infra_ Appendix. However the statute does not in terms require that _retired_ employees must, as petitioner suggests, be "able to enjoy the liberty to appoint their own representative(s)." Our examination of the legislative history does not bring to light any such intended requirement. Our examination of those portions of the record that petitioner cites _supra_ in his paragraph 19(b) does not bring to light any such requirement.

On the contrary, it clearly emerges that the Congress entrusted the Treasury Department with the specific task of writing interested party regulations. The Treasury Department has done so. As our analysis, _supra_, shows, in most instances only present employees of one sort or another can qualify as interested parties under the regulations. In the case of plan terminations, the focus shifts to certain former employees and beneficiaries of deceased former employees. Perhaps the objectives sought to be furthered by ERISA would have been better served if the Treasury Department had issued regulations more in line with petitioner's suggestion. However, ERISA does not _require_ the Treasury Department to do so, whether we focus merely on the enacted words or take into account the legislative history in order to understand the enacted words. Under these

circumstances, we shall not rewrite the authorized regulations to meet petitioner's concerns. See Newborn v. Commissioner, 94 T.C. 610, 636-637 (1990).

Petitioner also asserts that the Supreme Court's decision in Robinson v. Shell Oil Co., 519 U.S. 337 (1997), requires section 7476 to be construed to include petitioner as an interested party. We disagree.

The careful unanimous opinion of the Supreme Court in Robinson v. Shell Oil Co. points out that "employee" has a variety of meanings in sections 701(c), 703(h), 706(g)(1), and 717(a), (b), and (c) of title VII of the Civil Rights Act of 1964, Pub. L. 88-352, 78 Stat. 254, 257, 261, as amended. The opinion concludes that "employee" as used in section 704(a) of Pub. L. 88-352, 78 Stat. 257, is ambiguous and further concludes that the purposes of that section 704(a) would best be served by construing "employee" to include "former employee."

In the instant case, the plain language of the statute makes it clear that not every employee will be an "interested party". Also, in the instant case the plain language of the statute specifically commits to the Treasury Department the task of defining which employees are to be interested parties. Finally, in the instant case the regulations promulgated under this specific grant of authority make it clear that under some circumstances certain former employees can be interested parties. Thus, the analysis appearing in Robinson v. Shell Oil Co., supra,

does not apply so as to require that we interpret the term "present employee" in section 1.7476-1(b)(4), Income Tax Regs., to include "former employee."

We hold, for respondent Commissioner, that petitioner is not an interested party within the meaning of section 1.7476-1(b)(4), Income Tax Regs.

### (3) Plan Terminations

Petitioner also asserts that there were at least three plan terminations and thus section 1.7476-1(b)(5), Income Tax Regs., (supra note 4), applies to the instant case, and he qualifies as an interested party under that provision of the regulations. We have examined the situation as disclosed by the record and do not understand that there has been a termination of the MEBA Plan.

Firstly, we have not found, and petitioner has not directed our attention to, any statutory or regulatory provision or any case law, dealing with section 7476, under which the events in the record could fairly be described as a termination or partial termination.

Secondly, we note that section 411(d)(3) deals with terminations. We have not found, and petitioner has not directed our attention to, any statutory or regulatory provision or any case law, dealing with section 411, under which the events in the

record could fairly be described as a termination or partial termination.[11]

Thirdly, we note that 29 U.S.C. sec. 1341A deals with terminations of multiemployer plans. The events that petitioner complains of do not constitute terminations within the meaning of 29 U.S.C. sec. 1341A. See Kershaw Multiemployer Plans--Special Rules, 359-3d, Tax Mgmt. (BNA), A-35 (1994).

We hold, for respondent, that section 1.7476-1(b)(5), Income Tax Regs., does not apply to the instant case.

As a result of the foregoing, we conclude that petitioner is not an interested party within the meaning of section 7476(b)(1), and thus he does not have standing to bring the instant case.

_____

It must be clearly understood that our dismissal is only for lack of jurisdiction because, under the statute and the legislative regulations, petitioner does not have the standing to bring the instant case. We do not rule, either expressly or by implication, on the merits of any of the parties' contentions as to whether the MEBA Plan is tax-qualified. Further, we do not rule, either expressly or by implication, on whether petitioner may initiate a proceeding under any other part of ERISA, the

_____

[11] See sec. 1.411(d)-2(b), Income Tax Regs.; 1 Lieber, Lieber on Pensions, secs. 3:10,040, 3:10,050, at 3-250, 3-252 (1992).

Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829, as amended, to secure any of the relief he contends he is entitled to.

In light of the foregoing,

<u>Respondent Commissioner's motion to dismiss will be granted, and an appropriate order will be entered dismissing the instant case for lack of jurisdiction.</u>

Appendix

On April 18, 1973, the Senate Committee on Labor and Public Welfare reported S. 4, the Retirement Income Security for Employees Act. S. 4 did not include provisions for declaratory judgments. 119 Cong. Rec. 12926 (1973).

Section 601(a) of S. 1179, as reported on August 2, 1973, by the Senate Committee on Finance, provided for declaratory judgments as to tax-qualified status of employee plans. Proposed section 7477(a)(2) provided as follows:

SEC. 7477. PROCEDURE.

(a) Right To Bring Action.--

            *     *     *     *     *     *     *

(2) Actions brought by employees; intervention by employer.--An action for a declaratory judgment with respect to a determination obtained by an employer or by a trustee may also be brought by an individual who was an employee of the employer during the period with respect to which the judgment is sought. In any such action brought by an employee, the employer may intervene.

In S. Rept. 93-383, to accompany S. 1179, the Finance Committee stated as follows:

The committee believes that both employers and employees should have a right to court adjudication in the situations described above. The bill deals with the problem by providing that, in the event of an unfavorable determination (or failure to make a determination), the employer may ask the Tax Court for a declaratory judgment as to the status of a new plan, a plan amendment or a plan to be terminated. In addition, the committee has decided that interested employees should be allowed to participate in the consideration by the Service of an employer's request for a determination and any controversy connected with it. An employee who intervenes in the Service's determination

procedure is to be entitled to receive a copy of the determination issued by the Service in connection with the proceeding. If the employee questions a Service determination with respect to the qualification of a particular plan, he may petition the Tax Court to issue a declaratory judgment as to the status of the plan.

The committee believes that this procedure is desirable because it will permit all interested parties to the controversy (the Government, the trustee, the employer, and his employees) to have an opportunity to participate in the administrative determination of the matter and to have an opportunity to contest the Service determination of the matter.

S. Rept. 93-383, 113 (1973), 1974-3 C.B. (Supp.) 80, 192. On September 18, 1973, the Senate began floor debate on S. 4, and adopted as a substitute, an amendment which embodied an agreement between leaders of the Senate Finance Committee and the Senate Labor and Public Welfare Committee. The substitute embodied elements of S. 4, as reported, and S. 1179, as reported. In particular, section 601(a) of the substitute includes precisely the same language as section 601(a) of S. 1179, relating to declaratory judgment actions brought by employees.

On September 19, 1973, after the Senate completed action on further amendments to S. 4, the Senate took up H.R. 4200, a bill previously passed by the House of Representatives, and added the language of S. 4, as amended, as an amendment at the end of H.R. 4200. 119 Cong. Reg. 30416 (1973). The Senate then passed H.R. 4200, as thus amended. 119 Cong. Rec. 30428 (1973).

As a result of the foregoing, the language of H.R. 4200 as amended and passed by the Senate, insofar as it related to

declaratory judgment actions brought by employees, was identical to the language of S. 1179 as reported by the Senate Finance Committee and described in S. Rept. 93-383. Accordingly, it is appropriate to look to the Senate Finance Committee's report on S. 1179 for an authoritative explanation of section 601(a) of H.R. 4200, as passed by the Senate.

On October 2, 1973, the House Committee on Education and Labor reported H.R. 2, the Employee Benefit Security Act. H.R. 2 did not include provisions for declaratory judgments.

On February 5, 1974, the House Committee on Ways and Means reported H.R. 12481, to provide pension reform. Section 1041(a) of H.R. 12481 provided for declaratory judgments as to tax-qualified status of employee plans. Proposed section 7476(b)(1) was identical to what was enacted, except that the bill did not provide that the Pension Benefit Guaranty Corporation could be a petitioner. In H. Rept. 93-779, to accompany H.R. 12481, the House Ways and Means Committee stated as follows:

> Since the special tax benefits provided by the tax law are provided as an incentive to employers to adopt plans which provide for broad coverage of employees and protection of participants and beneficiaries, these individuals are to be treated as interested parties (under regulations prescribed by the Secretary or his delegate), and thus may petition the Tax Court to declare that the plan as constituted does not satisfy the requirements of the tax law designed to protect the employees and their beneficiaries as intended by Congress. For example, a participant under a plan would be entitled to bring an action if he alleges that the vesting provisions under the plan do not satisfy the minimum vesting requirements of the tax law (sec. 411), and thus the plan is not entitled to the tax benefits provided for qualified plans unless the plan is amended to satisfy the minimum

vesting requirements.  Similarly, such an action might be brought with regard to the antidiscrimination, the participation and coverage, or other requirements of current law or as added by this bill.  [H. Rept. 93-779, 106 (1974), 1974-3 C.B. 244, 349.]

H.R. 12855, reported on February 21, 1974, and H. Rept. 93-807, 1974-3 C.B. (Supp.) 236, are identical on this matter to H.R. 12481 and H. Rept. 93-779, respectively.  H.R. 12906, introduced on February 20, 1974, and referred to the House Education and Labor Committee, 120 Cong. Rec. 3568, did not include provisions for declaratory judgments.  On February 28, 1974, the House of Representatives agreed to substitute the texts of H.R. 12906 and H.R. 12855 for the text of H.R. 2, and then passed H.R. 2., 120 Cong. Rec. 4717, 4756, 4781 (1974).

As a result of the foregoing, the language of H.R. 2 as amended and passed by the House of Representatives, insofar as it related to declaratory judgment actions brought by employees, was identical to the language of H.R. 12481 and H.R. 12855 as reported by the House Ways and Means Committee and described in H. Rept. 93-779 and H. Rept. 93-807, respectively.  Accordingly, it is appropriate to look to the House Ways and Means Committee's reports on H.R. 12481 and H.R. 12855 for an authoritative explanation of section 1041(a) of H.R. 2, as passed by the House of Representatives.

On March 4, 1974, the Senate struck out all after the enacting clause of H.R. 2 and inserted in lieu thereof the text of H.R. 4200, as passed on September 19, 1973.

On August 12, 1974, the conference committee reported H.R. 2 and, in the Joint Explanatory Statement accompanying the reported legislative language, described the pertinent part of the declaratory judgment provision as follows, H. Conf. Rept. 93-1280, 259, 331 (1974), 1974-3 C.B. 415, 492:

Tax Court declaratory judgment proceedings

> Both the House bill and the Senate amendment provide a procedure for obtaining a declaratory judgment with respect to the tax-qualified status of an employee benefit plan. Under both the House and Senate versions of the bill, jurisdiction to issue a declaratory judgment is given to the United States Tax Court. This remedy is available only if the Internal Revenue Service has issued a determination as to the status of the plan which is adverse to the party petitioning in the Tax Court, or has failed to issue a determination but the petitioner has exhausted his administrative remedies inside the Internal Revenue Service.

> The differences between the bill as passed by both the House and the Senate are technical in nature. For example, the Senate amendment provides that the burden of proof is to be on the petitioner (the employer, plan administrator, or employee) as to those grounds set forth in the Internal Revenue Service determination; the burden of proof is to be on the Service as to any other grounds that the Service relies upon in the court proceeding (e.g., if the Service does not issue a determination as to the plan, then the Service is to have the burden of proof as to every ground as to which it relies). On the other hand, the House bill does not make specific provisions for burden of proof.

> Under the conference agreement, the House provision is accepted with a number of amendments. The Pension Benefit Guaranty Corporation is permitted to be a petitioner, on the same basis as other petitioners. Employees are permitted to be petitioners if they qualify as interested parties under Treasury regulations and have exhausted their administrative remedies. It is contemplated that only those employees who are entitled to petition the Secretary of Labor under section 3001 of this Act are to be treated as interested parties. It is contemplated that the question as to who bears the burden of proof will be determined by the Tax Court under its existing rule-making authority. Under the

existing Tax Court rules the taxpayer has the burden of proof as to matters in the notice of deficiency.  As to matters raised by the Service at the time of the Tax Court hearing, the Service has the burden.  It is expected that rules similar to these will be adopted by the Tax Court.

The legislative language thus described in the Conference Committee Joint Explanatory Statement was enacted as section 1041 of the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829, 949.