# United States Tax Court

T.C. Memo. 2023-148

EDWARD FRANCIS BACHNER, IV
AND REBECCA GAY BACHNER,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 23219-15.                    Filed December 13, 2023.

————————

Edward Francis Bachner, IV and Rebecca Gay Bachner, pro sese.

*Alexander R. Roche*, *Eugene A. Kornel*, *Sarah E. Sexton Martinez*, and *Mayer Y. Silber*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, *Judge*: Petitioners, Edward Francis Bachner, IV and Rebecca Gay Bachner, filed joint income tax returns for 2005, 2006, and 2007. As explained later in this Opinion, these returns were false in many respects, most significantly in that they claimed tax refunds through fictitious income tax withholding. Respondent (IRS) issued refunds to the Bachners.

In 2016 the IRS mailed a notice of deficiency to both the Bachners, determining civil fraud penalties under section 6663 against Mr. Bachner for 2005, 2006, and 2007 of $82,877, $164,671, and $146,259, respectively.[1] The notice did not determine deficiencies in income tax.

————————

[1] Unless otherwise indicated, references to sections are to the Internal Revenue Code of 1986, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all

**[*2]** The notice stated the IRS had granted Mrs. Bachner full relief under section 6015(b) for each year, and had mailed separate letters to Mr. and Mrs. Bachner regarding that decision.

The Bachners filed a timely petition for redetermination of section 6663 fraud penalties. They resided in Illinois when they filed their petition.

In this Opinion we hold that the underpayment of tax for each year is equal to the amount determined in the notice of deficiency and that the entire amount of each underpayment is due to fraud.

FINDINGS OF FACT

The parties did not execute a stipulation of facts. Pursuant to Rule 91(f)(3) the Court deemed stipulated paragraphs 1–15, 17–27, 29–41, 43–59, 61, and 62, of the IRS's August 10, 2016, proposed stipulation of facts, and admitted Exhibits 1-J through 20-J attached to the same document. At trial the Bachners did not appear, and no representative appeared on their behalf. The IRS called one witness, Revenue Agent Gregory C. Hines. He testified about the IRS's initial determination of the fraud penalty and managerial approval of the determination. The IRS introduced Exhibits 21-R through 27-R, which the Court admitted. The record of this case (not including the deemed stipulations) consists of the following: (1) Exhibits 1-J through 20-J (i.e., the Rule 91(f)(3) documents), (2) Exhibits 21-R through 27-R (i.e., the trial exhibits), and (3) the testimony of Hines. Some of our findings of fact are made on these three categories of evidence. Other findings of fact are the result of judicial notice under Rule 201(b)(2) of the Federal Rules of Evidence.[2] In summary, our findings of fact are made on the following five sources: (1) the deemed stipulations, (2) the Rule 91(f)(3) documents, (3) the trial exhibits, (4) the testimony of Hines, and (5) judicially noticed facts.

Mrs. Bachner was a registered nurse (paragraph 2 of the deemed stipulations). Mr. Bachner has a bachelor's degree in business

relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] We notified the parties by our Order of October 3, 2023, that we were inclined to take judicial notice of these facts. The Bachners objected. Their objections do not raise any genuine questions about (1) the accuracy of the sources of the facts or (2) the correctness of the facts. The facts concern basic procedural events in Mr. Bachner's criminal case, the most important aspects of which have already been deemed established. Judicial notice is appropriate.

**[*3]** (paragraph 3 of the deemed stipulations). The record discloses little else about the Bachners' educational backgrounds and occupations.

I. *The false returns for 2005, 2006, and 2007; Mr. Bachner's orders of tetrodotoxin; the $20 million insurance policy on Mrs. Bachner's life*

During the years at issue, the Bachners were a married couple with no children.

The Bachners filed joint Forms 1040, U.S. Individual Income Tax Return, for 2005–07. Mr. Bachner prepared and filed the returns. As explained later in this Opinion, the Bachners falsely claimed refunds on these returns through reporting fictitious wages and fictitious withholding. There were other erroneous items on the returns, also explained later.

On August 17, 2006, the Bachners electronically submitted their 2005 return to the IRS. The return claimed two personal exemptions.

The Bachners' 2005 return reported the following:

| Item | Amount | |
|---|---|---|
| Income | | |
| Wages, salaries, tips, etc. | $488,448 | |
| Other gains or losses (Form 4797) | −22,054 | |
| Adjustments to income | 0 | |
| Adjusted gross income | | 466,394 |
| Itemized deductions (Schedule A) | | |
| State and local income taxes | 69,607 | |
| Real estate taxes | 9,578 | |
| Home mortgage interest and points | 15,331 | |
| Miscellaneous deductions | | |
| Unreimbursed employee expenses | 46,182 | |
| Tax preparation fees | 525 | |
| Other expenses | 6,575 | |
| 2% AGI floor | −9,328 | |
| Total | | −128,857 |
| Net income | | 337,537 |
| Exemptions | | 0 |
| Taxable income | | 337,537 |
| | | |
| Tax | | 122,798 |
| Federal income tax withheld | | −234,044 |
| Refund | | 111,246 |

[*4] The miscellaneous deduction for "[o]ther expenses" claimed on Schedule A, Itemized Deductions, was further described in the return as expenses for investment counsel and advice.

On Form 4797, Sales of Business Property, which was included with the 2005 return, the Bachners claimed a $22,054 capital loss deduction for the sale or exchange of a Jeep Grand Cherokee. The Bachners reported that the Jeep was acquired for $37,000 on June 30, 1997, that depreciation of $14,846 had been taken since acquisition, and that the Jeep was sold for $100 on December 31, 2005.

The Bachners' 2005 return included a fake Form W–2, Wage and Tax Statement, purportedly issued by Rosetta-Wireless Corp. to Mr. Bachner, reporting wages of $457,940 and federal income tax withholding of $228,970. The Form W–2 also reported state income tax withholding of $68,691. The information from this Form W–2 (all of which was false) was reflected on the Bachners' Form 1040 (for wages and withholding) including the Schedule A (for state and local income taxes).

The Bachners' 2005 return included an authentic Form W–2 issued by the Camelot Schools, LLC, to Mrs. Bachner, reporting wages of $30,508 and withholding of $5,074. The Form W–2 also reported state income tax withholding of $916. The information from this Form W–2 was correct and was reflected on the Bachners' Form 1040.

The 2005 return failed to report certain items of income and an amount of income tax withholding.

The 2005 return claimed certain itemized deductions that were disallowed by the notice of deficiency.

On or about October 19, 2006, the IRS paid a $111,201 refund to the Bachners. The record does not explain why the amount refunded was $45 less than the refund claimed per return ($111,246).

Starting in late 2006, Mr. Bachner used a false identity to order shipments of a lethal neurotoxin called tetrodotoxin.[3] He placed and received his first order for tetrodotoxin in November 2006.

---

[3] Tetrodotoxin is a nerve toxin found in puffer fish and newts. J.E. Schmidt, *Attorney's Dictionary of Medicine* (2018). Tetrodotoxin poisoning "may progress to an ascending paralysis, respiratory failure, cardiovascular collapse, and death within six

**[\*5]** On April 10, 2007, the Bachners electronically submitted their 2006 return to the IRS. The return claimed two personal exemptions.

The Bachners' 2006 return reported the following:

| Item | Amount |
|---|---|
| Income | |
|   Wages, salaries, tips, etc. | $1,053,828 |
| Adjustments to income (IRA deduction) | −8,000 |
| Adjusted gross income | 1,045,828 |
| Itemized deductions (Schedule A) | |
|   State and local income taxes | 101,615 |
|   Real estate taxes | 35,000 |
|   Home mortgage interest and points | 15,000 |
|   Miscellaneous deductions | |
|     Unreimbursed employee expenses | 50,389 |
|     2% AGI floor | −20,917 |
|   Total | −163,180 |
| Net income | 882,648 |
| Exemptions | −2,200 |
| Taxable income | 880,448 |
| | |
| Tax | 285,132 |
| Federal income tax withheld | −509,469 |
| Federal telephone excise tax credit | −40 |
|   Refund | 224,377 |

The Bachners' 2006 return included a fake Form W–2 purportedly issued by EB Strategic Research, LLC, to Mr. Bachner, reporting wages of $1 million and federal income tax withholding of $500,000. The Form W–2 also reported state income tax withholding of $100,000. The information from this Form W–2 (all of which was false) was reflected in the Bachners' Form 1040 (for wages and withholding) including the Schedule A (for state and local income taxes).

The Bachners' 2006 return included an authentic Form W–2 issued by the Metropolitan Life Insurance Co. to Mrs. Bachner, reporting wages of $53,828 and withholding of $9,469. The Form W–2 also reported state withholding of $1,615. The information from this Form W–2 was correct and was reflected on the Bachners' Form 1040.

---

to 24 hours owing to paralysis of the respiratory muscles." *Attorneys' Textbook of Medicine* ¶ 49B.40 (3d ed. 2019).

**[*6]**    The 2006 return failed to report certain items of income, and an amount of income tax withholding.

The 2006 return reported certain itemized deductions that were disallowed by the notice of deficiency.

On or about May 18, 2007, the IRS made a $224,343 refund to the Bachners for the 2006 tax year, consisting of (1) a $218,133 payment and (2) a $6,210 offset against the Bachners' outstanding 2004 tax liability. The record does not explain why the amounts of the debt-offset and the refund ($6,210 + $218,133 = $224,343) were $34 less than the refund claimed on the return ($224,377).

In September 2007, almost a year after his first tetrodotoxin order, Mr. Bachner submitted an application for insurance on the life of Mrs. Bachner. The application was for $20 million in coverage. The application falsely claimed that Mrs. Bachner was the CEO of Trident Solutions, LLC, and that Mrs. Bachner was a "key person" whose "absence" would result in a loss to the company. In correspondence with the insurance underwriters, Mr. Bachner claimed to be an agent acting on behalf of Trident Solutions, LLC, and that Trident Solutions, LLC, sought insurance on the life of Mrs. Bachner. Mrs. Bachner's supposed signature appears on the life insurance application.

In February 2008 Mr. Bachner wired a $39,989 premium to the underwriter and a policy on Mrs. Bachner's life was issued. The policy insured Mrs. Bachner's life for the three-month period from February 11 until May 11, 2008. Trident Solutions, LLC, was the beneficiary under the insurance contract.

In February and March of 2008 Mr. Bachner placed and received three orders of tetrodotoxin.

On April 15, 2008, the Bachners electronically submitted their 2007 return to the IRS. The return claimed two personal exemptions.

The Bachners' 2007 return reported the following:

| [*7]                                    Item | Amount |
|---|---|
| Income | |
|   Wages, salaries, tips, etc. | $972,230 |
| Adjustments to income | 0 |
| Adjusted gross income | 972,230 |
| Itemized deductions (Schedule A) | |
|   State and local income taxes | 183,867 |
|   Real estate taxes | 12,000 |
|   Home mortgage interest and points | 18,000 |
|   Miscellaneous deductions | |
|     Unreimbursed employee expenses | 77,310 |
|     2% AGI floor | −19,445 |
|   Total | −255,415 |
| Net income | 716,815 |
| Exemptions | −2,266 |
| Taxable income | 714,549 |
| | |
| Tax | 263,684 |
| Federal income tax withheld | −466,435 |
|   Refund | 202,751 |

The Bachners' 2007 return included a fake Form W–2 purportedly issued by Fusion Marketing, LLC, to Mr. Bachner, reporting wages of $910,000 and federal income tax withholding of $455,000. The Form W–2 also reported state income tax withholding of $182,000. The information from this Form W–2 (all of which was false) was reflected in the Bachners' Form 1040 (for wages and withholding) including the Schedule A (for state and local income taxes).

The Bachners' 2007 return included an authentic Form W–2 issued by the Metropolitan Life Insurance Co. to Mrs. Bachner, reporting wages of $62,230 and federal income tax withholding of $11,435. The Form W–2 also reported state income tax withholding of $1,867. The information from this Form W–2 was correct and was incorporated in the Bachners' Form 1040.

The 2007 return failed to report certain items of income and an amount of income tax withholding.

The 2007 return claimed certain itemized deductions that were disallowed by the notice of deficiency.

On or about May 12, 2008, the IRS refunded $202,703 to the Bachners for 2007, consisting of (1) a $170,617 payment and (2) a $32,086 offset of a debt owed by the Bachners to another agency. The record does not explain why the amounts of the debt-offset and the

**[\*8]** refund ($32,086 + $170,617 = $202,703) were $48 less than the refund claimed on the return ($202,751).

In June 2008, Mr. Bachner placed another order for tetrodotoxin.

On June 30, 2008, Mr. Bachner was arrested. On August 26, 2008, a federal grand jury indicted Mr. Bachner under 18 U.S.C. § 175(a) on five counts of possessing a biological agent for use as a weapon and under 18 U.S.C. § 175(b) on five counts of possessing a biological agent without any justifiable research or other peaceful purpose. As a result, Mr. Bachner became the criminal defendant in *United States v. Bachner*, No. 3:08-cr-50029, filed on June 30, 2008, in the United States District Court for the Northern District of Illinois.

About a year later, on June 16, 2009, a federal grand jury added the following six counts to the ten counts in the original indictment:

- One count of wire fraud, under 18 U.S.C. § 1343, for wiring a $39,989 premium to a life insurance company in a scheme to defraud it and collect $20 million in life insurance proceeds;

- One count of soliciting another to commit a crime of violence under 18 U.S.C. § 373(a);

- One count of use of interstate commerce facilities with the intent to commit murder-for-hire under 18 U.S.C. § 1958(a);

- Three counts of making or presenting false claims to a United States department or agency, under 18 U.S.C. § 287, for filing false income tax refund claims with the IRS for 2005, 2006, and 2007, respectively.

On August 2, 2011, Mr. Bachner accepted a plea agreement and pleaded guilty to three counts in the superseding indictment: one count of wire fraud; one count of possessing a biological agent for use as a weapon; and one count of making or presenting a false claim to the IRS (for 2005).

As part of the plea agreement, Mr. Bachner "admitted" various facts regarding the three counts to which he pleaded guilty. With respect to the count for wire fraud, Mr. Bachner admitted the following: (1) he bought a $20 million life insurance policy on the life of his wife in a scheme to defraud the life insurance company through fraudulent pretenses, representations, and omissions; (2) to justify the amount of

**[\*9]** the coverage of the policy, he misrepresented his wife's employment, education, and work experience; and (3) he planned to profit from the death of his wife by collecting proceeds from the fraudulently obtained life insurance policy. With respect to the count for possession of a biological agent for use as a weapon, Mr. Bachner admitted that he knowingly acquired tetrodotoxin, using an alias, for the purpose of using it as a weapon. With respect to the count of making or presenting a false claim to the IRS for tax year 2005, Mr. Bachner admitted the following: (1) he made and presented to the IRS a claim for payment by filing a Form 1040 for tax year 2005; (2) he falsely claimed that he had received income and that federal income tax had been withheld from his income by Rosetta-Wireless Corp.; (3) as a result of those false statements on the return, the return falsely claimed he was entitled to a refund of $111,246; and (4) he made and presented the return to the IRS knowing that the return and the claimed refund were false, fictitious, and fraudulent.

As part of the plea agreement, Mr. Bachner admitted that he engaged in certain conduct that constituted relevant conduct under U.S. Sentencing Guideline § 1B1.3. *See* United States Sentencing Commission, *Guidelines Manual*, § 3E1.1 (Nov. 2010). In particular, Mr. Bachner admitted that for tax year 2006 (1) he made and presented to the IRS a claim for payment by filing a Form 1040 and (2) the return claimed a refund of withholding tax of $224,377, which he knew to be false, fictitious, and fraudulent. And for tax year 2007 Mr. Bachner admitted (1) he made and presented to the IRS a claim for payment by filing a Form 1040 and (2) the return claimed a refund of withholding tax of $224,377 which he knew to be false, fictitious, and fraudulent.[4]

Mr. Bachner was sentenced to 92 months' imprisonment on the wire fraud and biological-agent-possession counts and 60 months' imprisonment on the false-claim count, ordered to be served concurrently. He was also ordered to pay $512,396 in restitution to the United States Department of the Treasury. Mr. Bachner was in federal custody from the date of his arrest, June 30, 2008, until his release on March 4, 2015.

---

[4] This $224,377 figure, in the plea agreement, appears to be a cut-and-paste error from the previous taxable year. The Bachners' 2007 return claimed a $202,751 tax refund.

**[*10]** II. *Examination and notice of deficiency*

    A. *Examination*

The IRS selected the Bachners' 2005–07 returns for examination. Revenue Agent Gregory C. Hines conducted the examination.

    B. *Penalty approval form and 30-day letter*

Hines made the initial determination that the Bachners were liable for the section 6663 fraud penalty for the 2005–07 tax years and prepared a penalty approval form to seek approval for the penalty. Hines prepared the penalty approval form on or before August 1, 2013. On that form, Hines checked the "Yes" box for the section 6663 fraud penalty and checked the "Yes" box for the section 6662(b)(1) penalty as an alternative position. Under the heading "Group Manager Involvement," Group Manager Roheel Subhani checked the "Approved" box, wrote his initials, and dated the form "8/1/13." At the time Subhani approved the penalties, he was Hines's immediate supervisor. The penalty approval form named the "[t]axpayer" as "BACHNER, IV, EDWARD F & REBECCA G."

After Subhani approved the penalties, Hines mailed a 30-day letter to the Bachners.[5]

    C. *Notice of deficiency*

On June 11, 2015, the IRS mailed a notice of deficiency to the Bachners. At the top of the notice of deficiency was the return address, i.e., the writer's address:

    Department of the Treasury
    Internal Revenue Service
    Appeals Office
    200 West Adams Street
    Suite 600
    Chicago, IL 60606

The notice of deficiency then gave the inside address, i.e., the name and mailing information of the recipient:

---

[5] The IRS did not introduce the 30-day letter into evidence. Our finding of fact about the mailing of the 30-day letter is based on Hines's testimony.

[*11]  EDWARD F AND REBECCA G BACHNER
5704 MCKENZIE DR
LAKE IN THE HILLS IL 60156-5812

The notice of deficiency then stated the tax years and amounts of section 6663(a) penalties determined for each year.  The notice of deficiency then made the following salutation, i.e., greeting to the recipient: "Dear Mr. Bachner."  The notice of deficiency then stated that "you" owe the amounts in question and that "you" may file a Tax Court petition to contest the determination.  Parts of the notice of deficiency, such as the Form 5278, Statement – Income Tax Changes, and Form 4549B, Income Tax Examination Changes, state "Edward F & Rebecca G Bachner IV as the name of the "taxpayer(s)."  The notice of deficiency determined fraud penalties under section 6663 for 2005, 2006, and 2007, in the respective amounts of $82,877, $164,671, and $146,259.  The notice of deficiency did not determine deficiencies for 2005–07.  The notice of deficiency stated: "Rebecca Bachner has been granted innocent spouse relief under the provisions of IRC 6015(b).  She is not liable for tax, penalties, or interest for 2005, 2006, 2007."  The notice of deficiency further stated: "We have sent a separate letter to each spouse regarding our decision to grant relief."

1.  *2005 determinations*

The notice of deficiency determined that, contrary to the Form W–2 allegedly issued by Rosetta-Wireless Corp. to Mr. Bachner stating that he had wages of $457,940 and withholding of $228,970, Mr. Bachner did not receive any of the wages reported from Rosetta-Wireless Corp., and Rosetta-Wireless Corp. did not make the reported withholdings.

The notice of deficiency also determined that the Bachners failed to report the following amounts of gross income and withholding:

**[*12]**

| Item of income | Payor | Payee | Amount of income | Withholding |
|---|---|---|---|---|
| Wages | Adminstaff Co. II, L.P. | Mr. Bachner | $22,174 | $1,588 |
| Wages | Metropolitan Life Insurance Co. | Mrs. Bachner | 19,331 | 3,368 |
| Wages | New England Life Insurance Co. | Mr. Bachner | 2,769 | 237 |
| Unemployment compensation | Illinois Department of Employment Security | Mr. Bachner | 8,736 | 872 |
| Nonemployee compensation | Shelter Inc. | Mrs. Bachner | 1,276 | 0 |
| State income tax refund | State of Illinois Revenue Department | Mr. Bachner | 1,462 | 0 |
| Stock sale proceeds | Computershare Shareholder Services Inc. | Mr. Bachner | 6,151 | 0 |
| Interest | Bureau of the Public Debt | Mr. Bachner | 2,292 | 0 |
| Interest | Bachner Family Partnership Ltd. | Mr. Bachner | 114 | 0 |
| Interest | New York Life Insurance Co. | Mr. Bachner | 21 | 0 |
| Long-term capital gains | Bachner Family Partnership Ltd. | Mr. Bachner | 134 | 0 |
| Ordinary dividends | Bachner Family Partnership Ltd. | Mr. Bachner | 503 | 0 |
| Qualified dividends | Computershare Shareholder Services Inc. | Mr. Bachner | 153 | 0 |
| Qualified dividends | Mellon Investor Services | Mr. Bachner | 62 | 0 |
| Qualified dividends | UMB Bank N.A. | Mr. Bachner | 27 | 0 |
| Qualified dividends | Mellon Investor Services | Mrs. Bachner | 3 | 0 |
| **Total** | | | **65,208** | **6,065** |

The notice of deficiency also determined that the Bachners improperly claimed a $22,054 capital loss deduction for the sale or exchange of business property.

The notice of deficiency also determined that the Bachners improperly claimed $109,807 in itemized deductions:

| [*13]                Item              | Per return | Per notice | Disallowed |
|----------------------------------------|-----------|-----------|-----------|
| State and local income taxes           | $69,607   | $2,244    | $67,363   |
| Real estate taxes                      | 9,578     | 6,469     | 3,109     |
| Home mortgage interest deduction       | 15,331    | 10,337    | 4,994     |
| Unreimbursed employee expenses         | 46,182    | -0-       | 46,182    |
| Tax preparation fees                   | 525       | -0-       | 525       |
| Miscellaneous other expenses           | 6,575     | -0-       | 6,575     |
| Section 67(a) 2% floor                 | −9,328    | −1,913    | N/A       |
| **Total itemized deductions**          | **128,857** | **19,050** | **109,807** |

The section 67(a) 2% floor as determined by the IRS ($1,913) did not affect the IRS's computation of total itemized deductions because the IRS determined that the amount of miscellaneous itemized deductions, computed before the floor, was zero.

The notice of deficiency determined that the Bachners were entitled to two personal exemptions, the same number claimed on the return. The notice of deficiency computed that the total amount of deductions corresponding to these exemptions was $6,400.

The notice of deficiency determined that $90 was the amount of the deduction to which the Bachners were entitled for one-half of self-employment tax liability. The Bachners' 2005 return reported this amount was zero.

The notice of deficiency determined an underpayment of $110,503 as follows:

| Item | Amount | |
|------|--------|---|
| Tax imposed | | $10,396 |
| Tax shown on the return | | |
|   Tax reported | $122,798 | |
|   Withholding overstatement | − 222,905 | |
|   Total | −$100,107 | |
| Tax previously assessed | 0 | |
| Amount of rebates made | 0 | |
| Balance | | − (−)100,107 |
| Underpayment | | 110,503 |

The notice of deficiency determined a fraud penalty under section 6663 of $82,877, computed as 75% of the $110,503 underpayment of tax.

**[\*14]**      2.      *2006 determinations*

The notice of deficiency determined that, contrary to the Form W–2 allegedly issued by EB Strategic Research, LLC, to Mr. Bachner stating that he had wages of $1 million and withholding of $500,000, Mr. Bachner did not receive any of the wages reported from EB Strategic Research, LLC, and EB Strategic Research, LLC, did not make the reported withholdings.

The notice of deficiency also determined that the Bachners failed to report the following amounts of gross income and withholding:

| Item of income | Payor | Payee | Amount of income | Withholding |
|---|---|---|---|---|
| Wages | New England Life Insurance Co. | Mr. Bachner | $9,230 | $712 |
| State income-tax refund | State of Illinois Revenue Department | Mr. Bachner | 2,762 | 0 |
| Stock sale proceeds | The Colbent Corp. | Mr. Bachner | 1,530 | 0 |
| Stock sale proceeds | Computershare Shareholder Services Inc. | Mr. Bachner | 1,724 | 0 |
| Interest | Bachner Family Partnership Ltd. | Mr. Bachner | 86 | 0 |
| Interest | Metropolitan Life Insurance Co. | Mr. Bachner | 22 | 0 |
| Interest | Bank of America N.A. | Mr. Bachner | 12 | 0 |
| Long-term capital gains | Bachner Family Partnership Ltd. | Mr. Bachner | 1,491 | 0 |
| Ordinary dividends | Bachner Family Partnership Ltd. | Mr. Bachner | 561 | 0 |
| Qualified dividends | Embarq Corp. | Mr. Bachner | 2 | 0 |
| Qualified dividends | Mellon Investor Services | Mr. Bachner | 159 | 0 |
| Qualified dividends | UMB Bank N.A. | Mr. Bachner | 6 | 0 |
| Qualified dividends | Mellon Investor Services | Mrs. Bachner | 3 | 0 |
| **Total** | | | **17,588** | **712** |

The notice of deficiency also determined that the Bachners improperly claimed $150,698 in itemized deductions:

| [*15]       *Item* | *Per return* | *Per notice* | *Disallowed* |
|---|---|---|---|
| State and local income taxes | $101,615 | $1,892 | $99,723 |
| Real estate taxes | 35,000 | 6,545 | 28,455 |
| Home mortgage interest deduction | 15,000 | 4,045 | 10,955 |
| Unreimbursed employee expenses | 50,389 | 0 | 50,389 |
| Section 67(a) 2% floor | −20,917 | −1,268 | 0 |
| **Total itemized deductions** | **163,180** | **12,482** | **150,698** |

The section 67(a) 2% floor as determined by the IRS ($1,268) did not affect the IRS's computation of total itemized deductions because the IRS determined that the amount of miscellaneous itemized deductions, computed before the floor, was zero.

The notice of deficiency determined that the Bachners were entitled to two personal exemptions, the same number claimed on the return. The notice of deficiency computed that the total amount of deductions corresponding to these exemptions was $4,400.

The notice of deficiency determined an underpayment of $219,561 as follows:

| *Item* | | *Amount* | |
|---|---|---|---|
| Tax imposed | | | $5,405 |
| Tax shown on the return | | | |
|   Tax reported | $285,132 | | |
|   Withholding overstatement | − 499,288 | | |
|   Total | | −$214,156 | |
| Tax previously assessed | | 0 | |
| Amount of rebates made | | 0 | |
| Balance | | | − (−)214,156 |
| Underpayment | | | 219,561 |

The notice of deficiency determined a fraud penalty under section 6663 of $164,671, computed as 75% of the $219,561 underpayment of tax.

### 3. *2007 determinations*

The notice of deficiency determined that, contrary to the Form W–2 allegedly issued by Fusion Marketing, LLC, to Mr. Bachner stating that he had wages of $910,000 and withholding of $455,000, Mr. Bachner did not receive any of the wages reported from Fusion Marketing, LLC, and Fusion Marketing, LLC, did not make the reported withholdings.

[*16] The notice of deficiency also determined that the Bachners failed to report the following amounts of gross income and withholding:

| Item of income | Payor | Payee | Amount of income | Withholding |
|---|---|---|---|---|
| Wages | Rosetta-Wireless Corp.[6] | Mr. Bachner | $1,800 | $57 |
| Interest | Bachner Family Partnership Ltd. | Mr. Bachner | 120 | 0 |
| Interest | New York Life Insurance Co. | Mr. Bachner | 25 | 0 |
| Interest | Bank of America N.A | Mr. Bachner | 70 | 0 |
| Long-term capital gains | Bachner Family Partnership Ltd | Mr. Bachner | 388 | 0 |
| Ordinary dividends | Bachner Family Partnership Ltd. | Mr. Bachner | 629 | 0 |
| Qualified dividends | Embarq Corp. | Mr. Bachner | 9 | 0 |
| Qualified dividends | Mellon Investor Services | Mr. Bachner | 79 | 0 |
| **Total** | | | **3,120** | **57** |

The notice of deficiency also determined that the Bachners improperly claimed $227,437 in itemized deductions:

| Item | Per return | Per notice | Disallowed |
|---|---|---|---|
| State and local income taxes | $183,867 | $1,921 | $181,946 |
| Real estate taxes | 12,000 | 6,702 | 5,298 |
| Home mortgage interest deduction | 18,000 | 19,355 | −1,355 |
| Unreimbursed employee expenses | 77,310 | 0 | 77,310 |
| Section 67(a) 2% floor | −19,445 | −1,307 | 0 |
| **Total itemized deductions** | **255,415** | **27,978** | **227,437** |

The section 67(a) 2% floor as determined by the IRS ($1,307) did not affect the IRS's computation of total itemized deductions because the IRS determined that the amount of miscellaneous itemized deductions, computed before the floor, was zero.

The notice of deficiency determined that the Bachners were entitled to two personal exemptions, the same number claimed on the return. The notice of deficiency computed that the total amount of deductions corresponding to these exemptions was $4,534.

---

[6] *See infra* OPINION, Part IV.C, note 15.

[*17]  The notice of deficiency determined an underpayment of $195,012 as follows:

| Item | Amount | |
|---|---|---|
| Tax imposed | | $3,753 |
| Tax shown on the return | | |
|   Tax reported | $263,684 | |
|   Withholding overstatement | −454,943 | |
|   Total | −$191,259 | |
| Tax previously assessed | 0 | |
| Amount of rebates made | 0 | |
| Balance | | − (−)191,259 |
| Underpayment | | 195,012 |

The notice of deficiency determined a $146,259 fraud penalty under section 6663, computed as 75% of the $195,012 underpayment of tax.

## OPINION

At the outset, we discuss certain terms related to jurisdiction and to the section 6663 fraud penalty.

I.    *Definition of underpayment*

The term "underpayment" is defined by the Code.  It is relevant to the amount of the fraud penalty under section 6663, which is 75% of the portion of the underpayment of tax that is attributable to fraud.

An "underpayment" is defined in section 6664(a):

> [T]he term "underpayment" means the amount by which any tax imposed by this title exceeds the excess of—
> > (1) the sum of—
> > > (A) the amount shown as the tax by the taxpayer on his return, plus
> > > (B) amounts not so shown previously assessed (or collected without assessment), over
> > (2) the amount of rebates made.

**[\*18]** The definition of an underpayment has four components: (1) the "tax imposed," § 6664(a); (2) "the amount shown as the tax by the taxpayer on his return," § 6664(a)(1)(A); (3) "amounts not so shown previously assessed (or collected without assessment)," § 6664(a)(1)(B); and (4) "the amount of rebates made," § 6664(a)(2).

The definition of "underpayment" can be expressed using the following mathematical formula:

$$\text{Underpayment} = \text{Tax imposed} - \left[ \begin{array}{c}\text{The amount shown as the tax by the taxpayer on his return} \end{array} + \begin{array}{c}\text{Amounts not so shown previously assessed (or collected without assessment)}\end{array} - \begin{array}{c}\text{The amount of rebates made}\end{array} \right]$$

*See* Treas. Reg. § 1.6664-2(a).[7]

Treasury Regulation § 1.6664-2(b) provides that the "tax imposed" is determined without regard to credits for tax withheld on wages under section 31 (or credits for tax withheld under section 33,[8] or credits for payments of tax, or credits for payments of estimated tax). Treas. Reg. § 1.6664-2(b)(1) and (2). The section 31 credit operates as follows. An individual taxpayer is subject to income tax annually under section 1. Section 3402(a)(1) requires employers paying of wages to deduct and withhold the income tax from those wages. Under section 31, the amount withheld from wages is a credit against the tax imposed under section 1.

---

[7] This formula is the same formula found in Treasury Regulation § 1.6664-2(a), except that we have omitted the short form of the variables used in the regulatory formula. The formula given by the regulation is:

Underpayment = W − (X + Y − Z), where W = the amount of income tax imposed; X = the amount shown as the tax by the taxpayer on his return; Y = amounts not so shown previously assessed (or collected without assessment); and Z = the amount of rebates made.

*Id.*

[8] Section 33 provides for a credit for tax withheld at the source for nonresident aliens and foreign corporations and is not relevant to the determinations in this Opinion.

**[\*19]** Treasury Regulation § 1.6664-2(c)(1) provides that "the amount shown as the tax by the taxpayer on his return" is determined without regard to credits for tax withheld on wages under section 31 (or credits for tax withheld under section 33, or credits for payments of tax, or credits for payments of estimated tax), except that when the taxpayer overstates these amounts, the amount of overstatement will decrease "the amount shown as the tax by the taxpayer on his return." It follows that the amount of the overstatement increases the underpayment. *See* § 6664(a)(1)(B); *Snow v. Commissioner*, 141 T.C. 238, 242 (2013); *May v. Commissioner*, 137 T.C. 147, 152 (2011), *aff'd per order*, No. 12-1829, 2013 WL 1352477 (6th Cir. Feb. 19, 2013); *Feller v. Commissioner*, 135 T.C. 497, 503 (2010); *Sadler v. Commissioner*, 113 T.C. 99, 103 (1999). Treasury Regulation § 1.6664-2(g) (example 3) provides the following illustration:

> [T]axpayer reported a tax liability of $10,000, estimated tax payments of $15,000, and received a refund of $5,000. Estimated tax payments actually made . . . were only $7,000. For purposes of determining the amount of underpayment subject to a penalty under section 6662 or section 6663, the tax shown on the return is $2,000 (reported tax liability of $10,000 reduced by the overstated estimated tax of $8,000 ($15,000−$7,000)). The underpayment is $8,000 . . . .

Treasury Regulation § 1.6664-2(d) provides that "amounts not so shown previously assessed" means "amounts assessed before the return is filed that were not shown on the return." The regulation also provides that an amount "collected without assessment" means "the amount by which the total of the credits allowable under section 31 . . . and section 33 . . . , estimated tax payments, and other payments in satisfaction of tax liability made before the return is filed, exceed the tax shown on the return (provided such excess has not been refunded or allowed as a credit to the taxpayer)." *Id.*

Section 6664(a) provides that the phrase "the amount of rebates made" means "so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed was less than the excess of the amount specified in paragraph (1)[9] over the rebates previously made."

---

[9] "Paragraph (1)" is section 6664(a)(1).

**[\*20]** II.  *Definition of deficiency*

Section 6213(a) prohibits the IRS from assessing a deficiency without mailing a notice of deficiency to the taxpayer and permits the taxpayer 90 days from the mailing of the notice of deficiency to file a petition with the Tax Court for redetermination of the deficiency. The notice of deficiency is the taxpayer's "ticket" to the Court and a prerequisite for the Court's obtaining jurisdiction. *Baron v. Commissioner*, 71 T.C. 1028, 1034 (1979).

A "deficiency" is defined in section 6211(a):

[T]he term "deficiency" means the amount by which the tax imposed by subtitle A or B . . . exceeds the excess of—
> (1) the sum of
>> (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
>> (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—
> (2) the amount of rebates, as defined in subsection (b)(2), made.

Section 6211(b)(2) defines a "rebate" as "so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed by subtitle A or B or chapter 41, 42, 43, or 44 was less than the excess of the amount specified in subsection (a)(1) over the rebates previously made." Treasury Regulation § 301.6211-1(f) provides that a "rebate" means so much of an abatement, credit, refund, or other repayment as is made on the ground that the tax imposed is less than the excess of (1) the amount shown as the tax by the taxpayer on the return increased by the amount previously assessed (or collected without assessment) as a deficiency over (2) the amount of rebates previously made.

The Code provides that actual tax and tax reported are computed (for deficiency purposes) without regard to credits for tax withheld on wages under section 31 (or credits for tax withheld under section 33, or credits for payments of tax, or credits for payments of estimated tax). § 6211(b)(1); *see also* Treas. Reg. § 301.6211-1(b).

**[\*21]** Thus, the definitions of "underpayment" in section 6664(a) and "deficiency" in section 6211(a) diverge in their treatment of credits for tax withheld on wages under section 31 (or credits for tax withheld under section 33, or credits for payments of tax, or credits for payments of estimated tax). A deficiency is determined without accounting for these amounts, but an underpayment accounts for them by reducing the tax shown on the return by the amount they are overstated. *See* § 6211(b)(1); Treas. Reg. § 1.6664-2(a).

III. *Jurisdiction*

A. *Relevant jurisdictional principles*

The Tax Court, like other federal courts, is a court of limited jurisdiction and may exercise jurisdiction only to the extent authorized by Congress. § 7442; *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). If the Court finds that it does not have jurisdiction to consider an issue, then the Court may not decide the issue. *Naftel*, 85 T.C. at 530. The Court always has jurisdiction to determine whether it has jurisdiction. *Romann v. Commissioner*, 111 T.C. 273, 280 (1998) (citing *Wheeler's Peachtree Pharmacy, Inc. v. Commissioner*, 35 T.C. 177, 179 (1960)). "When a statutory provision is capable of two interpretations, 'we are inclined to adopt a construction which will permit us to retain jurisdiction without doing violence to the statutory language.'" *Bongam v. Commissioner*, 146 T.C. 52, 54–55 (2016) (quoting *Traxler v. Commissioner*, 61 T.C. 97, 100 (1973)).

The Court has jurisdiction under section 6213(a) in a deficiency proceeding only where the IRS issues a valid notice of deficiency and the taxpayer files a timely petition for redetermination. §§ 6212 and 6213; Rule 13(a), (c); *Sanders v. Commissioner*, No. 15143-22, 161 T.C., slip op. at 8 (Nov. 2, 2023); *Monge v. Commissioner*, 93 T.C. 22, 27 (1989). In the absence of a valid notice of deficiency, the Court is compelled to dismiss the case for lack of jurisdiction. *Monge*, 93 T.C. at 27.

All individual taxpayers are subject to income tax annually under section 1 and are required to file tax returns reporting their tax liabilities under section 6011. A deficiency is defined for basic purposes as the difference between the tax reported and the tax liability. § 6211(b)(1). *See supra* OPINION, Part II. If the IRS determines that there is a deficiency, it is barred from assessing or collecting the deficiency until it mails the taxpayer a notice of deficiency. § 6213(a). The notice of deficiency permits the taxpayer to file a petition with the

[*22] Tax Court, which gives the Tax Court jurisdiction to redetermine the deficiency.  § 6213(a); *see also* § 6214(a).

Under section 6013(a) "[a] husband and wife may make a single return jointly of income taxes."  Under Treasury Regulation § 1.6013-4(b), "[i]f a joint return is made, the gross income and adjusted gross income of husband and wife on the joint return are computed in an aggregate amount and the deductions allowed and the taxable income are likewise computed on an aggregate basis."  This regulation also provides: "Although there are two taxpayers on a joint return, there is only one taxable income.  The tax on the joint return shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several."  *Id.*  As is the case for an individual taxpayer, the IRS is barred from assessing or collecting the deficiency until it mails the taxpayers a notice of deficiency.  § 6213(a).  In the case of a joint return, "such notice of deficiency may be a single joint notice." § 6212(b)(2).  If the IRS has been notified by either spouse that separate residences have been established, a duplicate of the original joint notice must be mailed to each spouse at the last known address.  *Id.*  The joint notice of deficiency permits the taxpayers to file a joint petition or separate petitions with the Tax Court.  § 6213(a); *Camous v. Commissioner*, 67 T.C. 721, 735–36 (1977); *Dolan v. Commissioner*, 44 T.C. 420, 428 (1965).  As with individual taxpayers, a valid notice of deficiency and a timely petition give the Court jurisdiction.  §§ 6212, 6213, and 6214; Rule 13(a).

Although section 6213(a) bars the IRS from assessing or collecting a deficiency without mailing a notice of deficiency, section 6213(b)(1) authorizes the IRS, without mailing a notice of deficiency, to assess and collect tax that is greater than the tax reported on the return because of the return's mathematical error in calculating tax.  A petition filed to challenge such an assessment would be dismissed for lack of jurisdiction.  *Pope v. Commissioner*, T.C. Memo. 2020-62, at *8.  Section 6201(a)(3) provides that if a return reports an overstated amount of income tax withholding, the IRS may assess the overstated amount as a mathematical error under section 6213(b)(1).  If the taxpayer overstates the amount of income tax withholding, the IRS could summarily assess the withholding overstatement pursuant to the mathematical error correction procedures of section 6201(a)(3) without sending the taxpayer a notice of deficiency.  § 6213(b)(1); Treas. Reg. § 301.6201-1(a)(3).[10]  If,

---

[10] In its brief the IRS states that it has made such a summary assessment of overstated withholdings for the years at issue.

**[\*23]** in this scenario, the taxpayer were to file a petition challenging the assessment of the overstatement of withholding, the Court would dismiss it for lack of jurisdiction. §§ 6201(a)(3), 6213(b)(1); *Pope*, T.C. Memo. 2020-62, at \*8.

Section 6663(a) imposes a penalty equal to 75% of the amount of an underpayment due to fraud. The Court has jurisdiction in a situation in which the taxpayer allegedly fails to report income, the IRS determines a deficiency and a fraud penalty under section 6663, and the taxpayer files a petition with the Tax Court. Further, the Court has jurisdiction in a situation in which there is no deficiency determination, the IRS seeks solely to impose a fraud penalty under section 6663, and the taxpayer files a petition with the Tax Court. *See Eck v. Commissioner*, 16 T.C. 511, 514–15 (1951) (taxpayer filed a return reporting less tax than was owed, and then eliminated the deficiency by paying the shortfall before the IRS issued the notice of deficiency), *aff'd per curiam*, 202 F.2d 750 (2d Cir. 1953); *Rice v. Commissioner*, T.C. Memo. 1999-65, slip op. at 5–6. For example, in *Rice*, the taxpayer falsely claimed on his return that taxes had been withheld and included with the return fake Forms W–2 to support this claim. *Rice*, T.C. Memo. 1999-65, slip op. at 5–6. The IRS issued a notice of deficiency which did not determine a deficiency but did determine fraud penalties under section 6663. *Rice*, T.C. Memo. 1999-65, slip op. at 5–6. The taxpayer in *Rice* argued that the Court did not have jurisdiction because the notice of deficiency did not determine a deficiency. *Id.* The Court rejected this argument with the following explanation:

> Section 6665 provides that "additions to the tax, additional amounts, and penalties * * * shall be paid upon notice and demand and shall be assessed, collected, and paid in the same manner as taxes". A deficiency in tax is assessed, collected, and paid only after [the Commissioner] makes a determination and sends a notice of that determination in accordance with section 6213, which provides for the jurisdiction of this Court. Thus, [the Commissioner], in sending a notice determining [the taxpayer] was liable for a section 6663 penalty, was complying with the law that requires him to proceed in the same manner as if there were a deficiency. "The statute was intended to mean * * * that where such a notice was sent, the Tax Court has jurisdiction."

**[\*24]** *Id.*, slip. op. at 4 (quoting *Eck*, 16 T.C. at 515). Thus, a notice of deficiency that determines a fraud penalty, but no deficiency, is a valid basis for jurisdiction for the Court. *Eck*, 16 T.C. at 514–15; *Rice*, T.C. Memo. 1999-65, slip op. at 5–6; *see also May*, 137 T.C. at 150–151 (holding that the Court had jurisdiction to redetermine section 6663 fraud penalties resulting from overstated withholding credits).

Section 6512(b)(1) gives the Court jurisdiction to determine an overpayment. Once the Court has determined the amount of the overpayment, "such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer." *Id.* Section 6512(b)(2) provides further:

> If, after 120 days after a decision of the Tax Court has become final, the Secretary has failed to refund the overpayment determined by the Tax Court, together with the interest thereon as provided in subchapter B of chapter 67, then the Tax Court, upon motion by the taxpayer, shall have jurisdiction to order the refund of such overpayment and interest.

B.    *Issues over which the Court has jurisdiction*

The Bachners contend generally that the Court does not have jurisdiction over any aspect of the case. They also make specific challenges to jurisdiction.

We have jurisdiction to determine the amount of the underpayment under section 6663(a) for each year. §§ 6213(a), 6665. We observe that one component of an underpayment is the tax imposed and that the determinations in the notice of deficiency calculated the tax imposed on a joint basis for each year.

We have jurisdiction to determine, for each year, the portion of the underpayment due to fraud under section 6663(a). §§ 6213(a), 6665.

We have jurisdiction to determine the amount of any overpayment for any of the years. § 6512(b)(1).

We now consider the Bachners' specific challenges to our jurisdiction.

**[\*25]** C.     *The validity of the notice of deficiency*

The Bachners argue that because the notice of deficiency did not determine a deficiency under section 6211, the notice was invalid and the Court does not have jurisdiction as to either Mrs. Bachner or Mr. Bachner.

A notice of deficiency that determines a fraud penalty under section 6663, but no deficiency, is a valid basis for the Court to take jurisdiction (upon the filing of a timely petition) to determine the amount of the underpayment and the amount of the underpayment due to fraud. §§ 6212, 6213, and 6214; Rule 13(a), (c); *Eck*, 16 T.C. at 514–15; *Rice*, T.C. Memo. 1999-65, slip op. at 5–6.

We hold that the notice of deficiency is valid.

D.     *Jurisdiction as to Mrs. Bachner*

The Bachners argue that because the IRS granted Mrs. Bachner full innocent spouse relief under section 6015(b) and is not asserting the fraud penalties (or any other liability) against her, the notice erred in listing her as an addressee. (The notice of deficiency names both Bachners as addressees in the inside address. It also names both Bachners as "taxpayer(s).") The Bachners conclude that the notice of deficiency is invalid as to Mrs. Bachner and that she should be dismissed from this case.[11] Before trial the IRS had opposed dismissing Mrs. Bachner from the case, contending that the redetermination of Mr. and Mrs. Bachner's joint tax liabilities for years 2005, 2006, and 2007 is under the exclusive jurisdiction of the Court, and that Mrs. Bachner has standing to make an overpayment claim. The IRS now contends (in a footnote in its opening brief) that "[i]t is debatable as to whether petitioner-wife should be a party to this case, as the notice was only directed to Bachner (the notice of deficiency contains the salutation 'Dear Mr. Bachner')."

Both Mr. and Mrs. Bachner were issued a valid notice of deficiency for 2005, 2006, and 2007. *See supra* OPINION, Part III.C.

---

[11] The Bachners previously moved to dismiss Mrs. Bachner and sought to invalidate the notice of deficiency as to Mr. Bachner; but the motions were denied without prejudice because they did not take into account facts subsequently deemed established under Rule 91(f).

**[\*26]** Both Mr. and Mrs. Bachner timely petitioned the Court. Both "Edward Francis Bachner, IV" and "Rebecca Gay Bachner" are named as petitioners on the first page of the Petition. Both Mr. and Mrs. Bachner signed the Petition.

The IRS's determination of fraud penalties, the mailing of the notice of deficiency, and the timely filed Petition conferred jurisdiction on the Court. Once the Court acquires jurisdiction, that jurisdiction extends to the entire subject matter of the correct tax for the relevant taxable year. § 6214(a); *Naftel*, 85 T.C. at 533. Likewise, under section 6512(b)(1), the Court has jurisdiction to determine an overpayment, and to determine the amount of an overpayment.

Theoretically, if the Court determined an overpayment for any of the tax years at issue, the amount of that overpayment would be credited or refunded to the Bachners when the decision of the Tax Court became final. *See* § 6512(b)(1).[12]

We hold that the Court has jurisdiction as to Mrs. Bachner on the basis of the issuance of a valid notice of deficiency that was timely petitioned, thus giving the Court the theoretical ability to determine that she, together with Mr. Bachner, made overpayments for the years at issue. *See* §§ 6511(b)(2), 6512(b)(3).

E.       *Jurisdiction as to Mr. Bachner*

The Bachners also argue that because the notice of deficiency is supposedly invalid as to Mrs. Bachner, it is invalid as to Mr. Bachner. First, we held *supra* OPINION, Part III.D, that the notice is valid as to Mrs. Bachner. Second, even if the notice were invalid as to her, it would remain valid as to him. In *Baron*, 71 T.C. at 1035, we held that although a joint notice of deficiency was invalid as to the husband (because he was bankrupt), it was valid as to his nonbankrupt wife, and thus the Court had jurisdiction as to his wife, who filed a timely petition with the Court. We explained:

> Ruby [nonbankrupt wife] is a separate taxpayer, and she received notice that [the Commissioner] had determined a deficiency in her taxes. We find nothing that would invalidate the notice of deficiency to Ruby or make it a

---

[12] Although we have jurisdiction to determine that the Bachners made an overpayment, *see* § 6512(b)(1), the record does not show that they made an overpayment for any of the tax years at issue.

**[\*27]** nullity.  And since Ruby filed a petition in this Court for a redetermination of that deficiency, this Court has jurisdiction with respect to Ruby.

*Id.*  Thus, even if the notice of deficiency were invalid as to Mrs. Bachner, that would not force the conclusion that it is invalid as to Mr. Bachner.

We hold that the notice of deficiency is valid as to Mr. Bachner and that we have jurisdiction as to Mr. Bachner.

IV.    *Section 6663 fraud penalties*

Section 6663(a) provides: "If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud."  Section 7454(a) provides: "In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary."  Rule 142(b) provides: "In any case involving the issue of fraud with intent to evade tax, the burden of proof in respect of that issue is on the respondent, and that burden of proof is to be carried by clear and convincing evidence.  See Code sec. 7454(a)."  Section 6663(b) provides that if the IRS "establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud."

To satisfy the burden of proof for fraud that is imposed by section 7454(a) and Rule 142(b), the IRS must prove by clear and convincing evidence that "an underpayment exists for the years in issue and that some portion of the underpayment is due to fraud."  *Petzoldt v. Commissioner*, 92 T.C. 661, 699 (1989).  The IRS need not prove the amount of the underpayment by clear and convincing evidence.  *Zack v. Commissioner*, 692 F.2d 28 (6th Cir. 1982); *DiLeo v. Commissioner*, 96 T.C. 858, 873 (1991), *aff'd*, 959 F.2d 16 (2d Cir. 1992); *Shaw v. Commissioner*, 27 T.C. 561, 570 (1956), *aff'd*, 252 F.2d 681 (6th Cir. 1958).

If the IRS proves by clear and convincing evidence that a portion of the underpayment is due to fraud, the total amount of the underpayment for the year is then determined under the ordinary burden-of-proof rules.  *Zack v. Commissioner*, 692 F.2d at 29.

**[\*28]** Ordinarily, the determination of the amount of the underpayment in the notice of deficiency is presumed correct,[13] and therefore the taxpayer has the burden of proving that amount is incorrect. Rule 142(a); *Helvering v. Taylor*, 293 U.S. 507, 515 (1935); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). This burden is satisfied by a preponderance of evidence. *Freeman v. Commissioner*, 33 T.C. 323, 328 (1959).

Furthermore, if the IRS proves by clear and convincing evidence that a portion of the underpayment is due to fraud, then the entire underpayment is treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes by a preponderance of the evidence is not attributable to fraud. § 6663(b).

The courts have recognized that certain factors are indicators of fraud. These factors include substantially understating income for several years, engaging in illegal activities, and filing false documents. *Niedringhaus v. Commissioner*, 99 T.C. 202, 211 (1992); *Smith v. Commissioner*, 91 T.C. 1049, 1052, 1059–60 (1988), *aff'd*, 926 F.2d 1470 (6th Cir. 1991); *Recklitis v. Commissioner*, 91 T.C. 874, 910 (1988); s*ee also Feller*, 135 T.C. at 502. In determining the existence of fraud, the taxpayer's entire course of conduct may be considered. *Stone v. Commissioner*, 56 T.C. 213, 223–24 (1971); *Otsuki v. Commissioner*, 53 T.C. 96, 105–06 (1969).

In the case of a joint return, the fraud penalty "shall not apply with respect to a spouse unless some part of the underpayment is due to the fraud of such spouse." § 6663(c). In other words, the fraudulent intent of one spouse is not imputed to the other. *See Stone*, 56 T.C. at 227–28; *Norris v. Commissioner*, T.C. Memo. 2011-161, slip op. at 20.

Under section 6751(b), the fraud penalty must be approved in writing by the immediate supervisor of the IRS employee who initially determined to impose the penalty. *See* § 7491(c); *Clay v. Commissioner*, 152 T.C. 223, 248–50 (2019), *aff'd*, 990 F.3d 1296 (11th Cir. 2021); *Graev v. Commissioner*, 149 T.C. 485, 493 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016). The written approval of the initial penalty determination must be obtained before the proposed penalty is first formally communicated to the taxpayer in writing. *Frost v. Commissioner*, 154 T.C. 23, 32–35 (2020); *Clay*, 152 T.C. at 248–50; *see also Graev*, 149 T.C. at 493. In this case the IRS satisfied the section

---

[13] However, the presumption of correctness will not attach if the IRS fails to produce any evidence linking the taxpayer with income-producing activity. *Pittman v. Commissioner*, 100 F.3d 1308, 1313 (7th Cir. 1996), *aff'g* T.C. Memo. 1995-243.

**[\*29]** 6751(b) procedural requirements for imposing section 6663 fraud penalties. Supervisory approval must occur before the first formal communication of the penalty to the taxpayer. *Clay*, 152 T.C. at 248–50. The date of supervisory approval of the section 6663 fraud penalties was August 1, 2013. The supervisory approval took place before the sending of the 90-day letter, which was a formal communication of the penalty to the Bachners. The supervisory approval also took place before the sending of the 30-day letter, which may or may not have been a formal communication of the penalty to the Bachners. The 30-day letter is not in the record. With the possible exception of the 30-day letter, there is no evidence that the IRS made a formal communication of the penalty to the Bachners before the 90-day letter. Thus, the IRS has satisfied section 6751(b).

We must still resolve the Bachners' challenge to the determinations in the notice of deficiency that they had underpayments of $110,503 for 2005, $219,561 for 2006, and $195,012 for 2007 and that the underpayments were due to fraud.[14]

A.  *2005*

The IRS proved by clear and convincing evidence that the 2005 return was incorrect in reporting that Rosetta-Wireless Corp. withheld $228,970 of federal income tax from Mr. Bachner's wages, thus establishing by clear and convincing evidence that there was an underpayment for the year. The return's claim (that $228,970 was withheld) reflected the same amount stated on the Form W–2 allegedly issued by Rosetta-Wireless Corp. to Mr. Bachner. Paragraph 26 of the deemed stipulations states that this Form W–2 was fake. Therefore, there was an underpayment for 2005 related to this fake Form W–2.

The IRS proved by clear and convincing evidence that this misreporting was due to fraud. The function and effect of the fake Form

---

[14] The doctrine of collateral estoppel (sometimes referred to as issue preclusion), which prevents the relitigation of an issue that has been previously litigated between the parties and later recurs in other litigation between the parties, *Koprowski v. Commissioner*, 138 T.C. 54, 60 (2012), is inapplicable in this case. Although Mr. Bachner pleaded guilty to making a false claim to the IRS, in violation of 18 U.S.C. § 287, for the 2005 return, he is not collaterally estopped from litigating the fraud penalties because intent to evade tax is an element of liability for civil tax fraud but is not an element of the crime of making a false claim to the United States. *Compare* 18 U.S.C. § 287, *with* § 6663. Therefore, while Mr. Bachner's guilty plea and underlying conduct may be relevant to fraudulent intent, he is not precluded from litigating the fraud penalties under section 6663 in this case.

[*30] W–2 was to convince the IRS that taxes had been overwithheld from Mr. Bachner's wages. Mr. Bachner falsified this Form W–2, purportedly issued by Rosetta-Wireless Corp., and attached the fake Form W–2 to the Form 1040 for 2005. On the Form 1040, Mr. Bachner requested a tax refund of $111,246 based on $228,970 (the withholding claimed on the fake Form W–2) and $5,074 that was actually withheld from Mrs. Bachner's wages. Filing this false Form W–2 demonstrates that the withholding claim on the return was fraudulent. *See Feller*, 135 T.C. at 502 (stating that filing false documents is an indicator of fraud); *Recklitis*, 91 T.C. at 910 (same). That Mr. Bachner continued to use the same ploy involving fake Forms W–2 over the next two years also demonstrates that the 2005 return's claim of withholding was fraudulent. *See Stone*, 56 T.C. at 223–24 (stating that a taxpayer's entire course of conduct can be an indicator of fraud); *Otsuki*, 53 T.C. at 105–06 (same). As part of his criminal case, Mr. Bachner pleaded guilty to making a false claim on the federal Government through the filing of the 2005 return. This also indicates fraud.

The IRS determined that the total underpayment for 2005 was $110,503. The alleged errors on the return giving rise to this underpayment can be divided into four types.

The first type is the reporting of federal income tax withholding by Rosetta-Wireless Corp., which was related to reporting that Rosetta-Wireless Corp. paid a fictitious amount of wages to Mr. Bachner. We have held that the IRS proved this type of error by clear and convincing evidence.

The second type is failing to report wages of $2,769 and withholding of $237 from New England Life Insurance Co. and wages of $22,174 and withholding of $1,588 from Adminstaff Cos. II, L.P. That the return erred in this regard is established by paragraphs 20, 21, 22, and 27 of the deemed stipulations.

The third type is failing to report wages of $19,331 from Metropolitan Life Insurance Co. and withholding of $3,368, unemployment compensation, nonemployee compensation, a state income tax refund, stock sale proceeds, interest, long-term capital gains, ordinary dividends, and qualified dividends. That the return erred in this regard is established by a preponderance of the evidence in the form of IRS records of third-party reporting, which are Exhibits 6-J and 7-J.

**[*31]** The fourth type is improperly claiming itemized deductions for state income taxes, real estate taxes, home mortgage interest, unreimbursed employee expenses, tax preparation fees, and miscellaneous other expenses. For this type of error, there is no evidence in the record regarding whether the return was correct. Therefore, the Bachners have failed to disprove the notice of deficiency's determination of these errors by a preponderance of the evidence.

The Bachners have not proven by a preponderance of the evidence that the underpayment for 2005 is less than that determined in the notice of deficiency. We accordingly hold that the Bachners have an underpayment of tax of $110,503 for the tax year 2005. *See* Rule 142(a); *Helvering v. Taylor*, 293 U.S. at 515; *Welch v. Helvering*, 290 U.S. at 115; *Freeman*, 33 T.C. at 328. For the tax year 2005 Mr. Bachner has not established by a preponderance of the evidence that any portion of the underpayment was not attributable to fraud.

Therefore, Mr. Bachner is liable for the section 6663 fraud penalty for the entire underpayment for 2005. *See* § 6663; *Zack v. Commissioner*, 692 F.2d at 29; *DiLeo*, 96 T.C. at 873; *Freeman*, 33 T.C. at 328.

B.   *2006*

The IRS proved by clear and convincing evidence that the 2006 return was incorrect in reporting that EB Strategic Research, LLC, withheld $500,000 of federal income tax from Mr. Bachner's wages, thus establishing there was an underpayment for the year. The return's claim (that $500,000 was withheld) reflected the same amount stated on the Form W–2 allegedly issued by EB Strategic Research, LLC, to Mr. Bachner. Paragraph 41 of the deemed stipulations states that this Form W–2 was fake. Therefore, there was an underpayment for 2006 related to this fake Form W–2.

The IRS proved by clear and convincing evidence that this misreporting was due to fraud. The function and effect of the fake Form W–2 was to convince the IRS that taxes had been overwithheld from Mr. Bachner's wages. Mr. Bachner falsified this Form W–2, purportedly issued by EB Strategic Research, LLC, and attached the fake Form W–2 to the Form 1040 for 2006. On the Form 1040, Mr. Bachner requested a tax refund of $224,377 based on $500,000 (the withholding claimed on the fake Form W–2) and $9,469 that was actually withheld from Mrs. Bachner's wages. Filing this false Form W–2 demonstrates that the

**[\*32]** return's claim of withholding was fraudulent. *See Feller*, 135 T.C. at 502 (stating that filing false documents is an indicator of fraud); *Recklitis*, 91 T.C. at 910 (same). Mr. Bachner's use of the same ploy involving fake Forms W–2 over three tax years (2005–07) also demonstrates that the 2006 return's claim of withholding was fraudulent. *See Stone*, 56 T.C. at 223–24 (stating that taxpayer's entire course of conduct can be an indicator of fraud); *Otsuki*, 53 T.C. at 105–06 (same). As part of his plea agreement, Mr. Bachner admitted that he knew the report of withholding was false. This also indicates fraud.

The IRS determined that the total underpayment for 2006 was $219,561. The alleged errors on the return giving rise to this underpayment can be divided into five types.

The first type was the report of federal income tax withholding by EB Strategic Research, LLC, which was related to a reporting that EB Strategic Research, LLC, paid a fictitious amount of wages to Mr. Bachner. We have held that the IRS proved this type of error by clear and convincing evidence.

The second type is the underreporting of other wages. As to the underreporting of other wages, the notice of deficiency determined that Mr. Bachner failed to report wages of $9,230 and withholding of $712 from New England Life Insurance Co. That the return erred in this regard is established by paragraphs 35, 36, and 40 of the deemed stipulations.

The third type is underreporting of interest income. The notice of deficiency determined that Mr. Bachner failed to report $12 of interest income from Bank of America. That the return erred in this regard is established by a preponderance of the evidence in the form of bank statements admitted at trial as Exhibit 27-R and IRS records of third-party reporting, which is Exhibit 11-J.

The fourth type is failing to report a state income tax refund, stock sale proceeds, interest, long-term capital gains, ordinary dividends, and qualified dividends. That the return erred in this regard is established by a preponderance of the evidence in the form of IRS records of third-party reporting, which are Exhibits 11-J and 12-J.

The fifth type is improperly claiming itemized deductions for state income taxes, real estate taxes, home mortgage interest, and unreimbursed employee expenses. For this type of error there is no evidence in the record regarding whether the return was correct.

**[\*33]** Therefore, the Bachners have failed to disprove the notice of deficiency's determination of these errors by a preponderance of the evidence.

The Bachners have not proven by a preponderance of the evidence that the underpayment for 2006 is less than that determined in the notice of deficiency. We accordingly hold that the Bachners have an underpayment of tax of $219,561 for the tax year 2006. *See* Rule 142(a); *Helvering v. Taylor*, 293 U.S. at 515; *Welch v. Helvering*, 290 U.S. at 115; *Freeman*, 33 T.C. at 328.

For the tax year 2006, Mr. Bachner has not established by a preponderance of the evidence that any portion of the underpayment was not attributable to fraud.

Therefore, Mr. Bachner is liable for the section 6663 fraud penalty for the entire underpayment for 2006. *See* § 6663; *Zack v. Commissioner*, 692 F.2d at 29; *DiLeo*, 96 T.C. at 873; *Freeman*, 33 T.C. at 328.

C.    *2007*

The IRS proved by clear and convincing evidence that the 2007 return was incorrect in reporting that Fusion Marketing, LLC, withheld $455,000 of federal income tax from Mr. Bachner's wages, thus establishing by clear and convincing evidence there was an underpayment for the year. The return's claim (that $455,000 was withheld) reflected the same amount stated on the Form W–2 allegedly issued by Fusion Marketing, LLC, to Mr. Bachner. Paragraph 59 of the deemed stipulations states that this Form W–2 was fake. Therefore, there was an underpayment for 2007 related to this fake Form W–2.

The IRS proved by clear and convincing evidence that this misreporting was due to fraud. The function and effect of the fake Form W–2 was to convince the IRS that taxes had been overwithheld from Mr. Bachner's wages. Mr. Bachner falsified this Form W–2, purportedly issued by Fusion Marketing, LLC, and attached the fake Form W–2 to the Form 1040 for 2007. On the Form 1040, Mr. Bachner requested a tax refund of $202,751 based on $455,000 (the withholding claimed on the fake Form W–2) and $11,435 that was actually withheld from Mrs. Bachner's wages. Filing this false Form W–2 demonstrates that the return's claim of withholding was fraudulent. *See Feller*, 135 T.C. at 502 (stating that filing false documents is an indicator of fraud); *Recklitis*, 91 T.C. at 910 (same). Mr. Bachner's use of the same ploy involving fake

[*34] Forms W–2 over three tax years (2005–07) also demonstrates that the 2007 return's claim of withholding was fraudulent. *See Stone*, 56 T.C. at 223–24 (stating that taxpayer's entire course of conduct can be an indicator of fraud); *Otsuki*, 53 T.C. at 105–06 (same). As part of his plea agreement, Mr. Bachner admitted that he knew the report of withholding was false. This also indicates fraud.

The IRS determined that the total underpayment for 2007 was $195,012. The alleged errors on the return giving rise to this underpayment can be divided into five types.

The first type was the report of federal income tax withholding by Fusion Marketing, LLC, which was related to a reporting that Fusion Marketing, LLC, paid a fictitious amount of wages to Mr. Bachner. We have held that the IRS proved this type of error by clear and convincing evidence.

The second type is the underreporting of other wages. The notice of deficiency determined that Mr. Bachner failed to report wages of $1,800 and withholding of $57.[15] That the return erred in this regard is established by paragraphs 51, 52, and 58, of the deemed stipulations.

The third type is underreporting of interest income. The notice of deficiency determined that Mr. Bachner failed to report $70 of interest income from Bank of America. That the return erred in this regard is established by a preponderance of the evidence in the form of bank statements admitted at trial as Exhibit 27-R and IRS records of third-party reporting, which is Exhibit 17-J.

The fourth type is failing to report interest, long-term capital gains, ordinary dividends, and qualified dividends. That the return erred in this regard is established by a preponderance of the evidence in

---

[15] According to the stipulations and Exhibit 18-J, a wage and income transcript for Mr. Bachner for 2007, Mr. Bachner earned the $1,800 of wages from Embarq Corp. However, Exhibit 17-J, also a wage and income transcript for Mr. Bachner for 2007, states that Mr. Bachner earned these wages from Rosetta-Wireless Corp. In its opening brief, the IRS states that although the stipulations show that Mr. Bachner earned this income from Embarq Corp., Mr. Bachner, in fact, earned the income from Rosetta-Wireless Corp. The IRS explains that Exhibit 18-J, which "refers to Embarq Corporation" shows only "summary" information and that Exhibit 17-J, which shows Rosetta-Wireless Corp. as the payor, should be relied upon. Because the stipulations and Exhibits 17-J and 18-J establish that Mr. Bachner failed to report wages of $1,800 and withholding of $57, it does not matter for the purposes of this Opinion whether Embarq Corp. or Rosetta-Wireless Corp. was the employer.

**[*35]** the form of IRS records of third-party reporting, which is Exhibit 17-J.

The fifth type is improperly claiming itemized deductions for state income taxes, for real estate taxes, home mortgage interest, and unreimbursed employee expenses. For this type of error, there is no evidence in the record regarding whether the return was correct. Therefore, the Bachners have failed to disprove the notice of deficiency's determination of these errors by a preponderance of the evidence.

The Bachners have not proven by a preponderance of the evidence that the underpayment for 2007 is less than that determined in the notice of deficiency. We accordingly hold that the Bachners have an underpayment of tax of $195,012 for the tax year 2007. *See* Rule 142(a); *Helvering v. Taylor*, 293 U.S. at 515; *Welch v. Helvering*, 290 U.S. at 115; *Freeman*, 33 T.C. at 328.

For the tax year 2007, Mr. Bachner has not established by a preponderance of the evidence that any portion of the underpayment was not attributable to fraud.

Therefore, Mr. Bachner is liable for a section 6663 fraud penalty for the entire underpayment for 2007. *See* § 6663; *Zack v. Commissioner*, 692 F.2d at 29; *DiLeo*, 96 T.C. at 873; *Freeman*, 33 T.C. at 328.

V.     *Conclusion*

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered that there are section 6663 penalties due from petitioner Edward Francis Bachner, IV of $82,877 for 2005, $164,671 for 2006, and $146,259 for 2007; and there are no overpayments due to petitioners Edward Francis Bachner, IV and Rebecca Gay Bachner for 2005, 2006, and 2007.*